## Appeal of E. A. ARMSTRONG.        Docket No. 232.

Taxpayer held a fifteen-payment life insurance policy containing tontine features by which it might become an endowment and be payable prior to his death. Some of the premiums were paid prior to and some subsequent to March 1, 1913, and the policy matured and the face amount thereof with a small additional sum was paid to the taxpayer in 1920. *Held* that the difference between the face amount of the policy and (a) the surrender value at completion of premium payment plus (b) accumulated dividends or excess premiums at March 1, 1913, is taxable gain subject to both normal and surtax under the Revenue Act of 1918. The sum received in excess of the face of the policy is subject to taxation as a corporate dividend at surtax rates only.

Submitted December 9, 1924; decided January 13, 1925.

*E. A. Armstrong, Esq.*, the taxpayer, *pro se.*

*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

### Before Ivins and Marquette.

This appeal came on for hearing on November 21, 1924, upon the pleadings and certain exhibits filed by the parties, from which the Board makes the following

#### FINDINGS OF FACT.

In 1901 the taxpayer took out a policy of life insurance with the Union Central Life Insurance Co. in the principal amount of $10,000, under the terms of which he was required to pay annual premiums of $478.40 for 15 years. The policy contained certain tontine features by which it was provided that upon the maturity of the policy it would be effective as an endowment and the principal amount of $10,000 would be paid. The policy was to mature, according to the statement of the taxpayer (that particular portion of the policy being omitted from the exhibit filed by the taxpayer), when the accumulated fund of the particular tontine group should reach a figure sufficient to pay the principal amounts to all remaining members of the group.

The taxpayer paid premiums at the rate of $478.40 for 15 years, a total of $7,176, of which $5,740.80 was paid prior to March 1, 1913. The cash surrender value of the policy at the close of the premium-paying period was $5,350, and at that time there had been credited to the taxpayer on account of the policy so-called "dividends" in the aggregate amounting to $2,451.70, but there is no evidence in the record to show what the surrender value or the accumulated dividends were at March 1, 1913.

The policy matured in 1920, and on June 15, 1920, the taxpayer received from the insurance company $10,134.40. Of this amount the Commissioner regarded $2,824 as a gain subject to normal tax and surtax, and $134.40 as corporate dividend subject to surtax only, and determined a deficiency accordingly. The taxpayer appealed from such determination, contending that none of the money so received was taxable income.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Determination will be settled on consent or on 10 days' notice in accordance with Rule 50.

### OPINION.

Ivins: The taxpayer has developed several involved theories of his taxability based principally on statements of what would have happened and what would have been his rights under the policy in certain hypothetical circumstances which did not occur. The facts are that the taxpayer took out a 15-payment life insurance policy containing a tontine feature under which it might mature prior to his death and become payable as an endowment, that he paid premiums for 15 years, and that thereafter the policy matured as an endowment when he received the face amount thereof plus $134.40. What the taxpayer's right would have been had he surrendered the policy after completing the premium payments; what the rights of the beneficiaries would have been had he died; what his rights would have been if he had transformed the policy into paid-up insurance or had elected to take advantage of any of the other options contained in the policy do not concern us. He had an asset on March 1, 1913, consisting of the cash surrender value of the policy at that date plus any accumulated so-called dividends or excess premiums which had been credited to him and which would have become payable to him upon surrender of the policy. The evidence does not tell us what this policy value was or how much such accumulation may have been. The taxpayer contended in argument that the policy was really worth a lot more than its surrender value on March 1, 1913, because other members of the tontine group had dropped out, etc., and that every time one dropped out the value of the policies of the remaining members increased; but such increased value was entirely contingent upon the taxpayer's remaining in the group until the maturity of his policy. The market or realizable value of the policy was not changed by the occasional elimination of members of the group, though the probable time of maturity may have been advanced—remaining, however, strictly contingent.

The Revenue Act of 1918 does not contemplate the computation of gain or loss by reference to contingent values. A taxpayer who owned an asset before March 1, 1913, and disposed of it thereafter is entitled in computing profit to subtract from the selling price the capital value which he held on March 1, 1913 (or the cost to him, if higher), plus any additional cost incurred after March 1, 1913, with proper adjustments for values recovered through depreciation, etc. The capital value so recoverable must be a market value, a realizable value—not a theoretical value computed by reference to some future contingent event.

The taxpayer by March 1, 1913, had paid in premiums $5,740.80, but the cash surrender value of the policy on that day was less than that amount—it was only $5,350 on June 15, 1915. The excess of the sum of premiums paid over the cash surrender value does not represent a cost to the taxpayer of his asset in the policy but represents merely the cost of earned insurance—an annually recurring expense. The cost of earned life insurance is not a capital investment any more than the cost of earned fire or marine insurance. It is a current expense, and should not be treated as anything else. The expense, being personal, is not deductible—and the taxpayer may not accomplish the effect of a prohibited deduction by treating an item of current expense as part of the cost of a capital investment.

The capital value at March 1, 1913, which the taxpayer is entitled to have returned before he can be said to have had taxable profit will be the cash surrender value of the policy at that date plus any accumulated dividends or excess premiums which had been credited to him in such a way that he could have realized them had he surrendered the policy on March 1, 1913. Any greater value would be purely speculative and contingent, and can not be made the basis for computing taxes.

To the value on March 1, 1913, should be added the cost after 1913 of the investment finally realized upon. This cost would be that part of the premiums paid subsequent to March 1, 1913, which are attributable to a capital value in the policy and not to current earned insurance; in other words, the amount by which the surrender value of the policy was increased by payments made after March 1, 1913. This amount when added to the cash surrender value of the policy proper at March 1, 1913, would total $5,350, the cash surrender value of the policy proper at the termination of the premium-paying period. This $5,350 plus the dividends or excess premiums credited and subject to withdrawal at March 1, 1913, is all that the taxpayer is entitled to treat as recoverable capital. The difference between that sum and the $10,000 face value of the policy constituted a taxable profit when realized and it is taxable as a profit, not as a corporate dividend. The taxpayer did not receive it by way of dividend upon his stockholding in a corporation but under the terms of a contract which very distinctly and definitely fixed the amount which he was to receive upon the maturity of the policy.

It is true that the time of maturity was not fixed in the policy, but it was not contingent upon the prosperity of the company as dividends would be. It was contingent upon the way in which the members of the particular tontine group might happen to die or

withdraw. We see no basis for holding that this gain should be treated as a corporate dividend.

Over and above the amount which the insurance company had contracted to pay upon the maturity of the policy, the taxpayer received $134.40. This was a share of the earnings of the company attributable to this policy, derived during the period between the actual time the policy became mature and its anniversary date upon which it was paid. It was received by the taxpayer as his share of corporate earnings and is taxable as a corporate dividend at surtax rates only.

Owing to the absence of exact figures with respect to the accumulated dividends or excess premiums credited to the policy on March 1, 1913, it is impossible for us to compute the taxable gain, but it should be computed by subtracting from $10,000 the sum of $5,350 and the said unknown amount of dividends or excess premiums. The resulting difference is taxable for both normal and surtax, and the sum of $134.40 is subject to surtax only. The deficiency should be recomputed accordingly.