*679 OPINION.
Smith:
In each of his income-tax returns for 1918 and 1919, the taxpayer deducted from gross income for exhaustion of a patent $94,105.55. In the audit of the returns the Commissioner has disallowed so much of the claimed deduction as is in excess of $45,793.97. The Commissioner’s allowance is based on a March 1, 1913, value of the patent of $457,939.70. The taxpayer contends that the value on March 1, 1913, was from $1,250,000 to $1,500,000.
Upon the hearing of this appeal counsel for the taxpayer was asked whether, in view of the recent decisions of the Supreme Court of the United States in the cases of United States v. Flannery, 268 U. S. 98; and McCaughn v. Ludington, 268 U. S. 106, the basis for the deduction of an amount representing the exhaustion of the patent here in question should be its cost, which was less than its fair market value on March 1, 1913, or the value on the last-named date. This inquiry was prompted by the fact that, if there had been a sale of the patent in either of the tax years in question, there would be no question but that any loss sustained therefrom based upon the March 1, 1913, value would not constitute a legal deduction from gross income in the year of sale, since the patent cost the taxpayer nothing when acquired in 1906; that since exhaustion or depreciation is a wasting of property and therefore in effect a loss, should not the depreciation deduction under the Revenue Act of 1918 be computed upon the basis of cost or value at March 1, 1913, whichever is lower, the same as a loss from the sale of property based upon a March 1, 1913, value of property acquired prior to that date ?
The Revenue Act of 1918 permits a taxpayer corporation to deduct from gross income in income-tax returns “ a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.” *680 Section 234 (a) (7). The statute is silent as to the basis upon which such reasonable allowance shall be computed. The Excise Tg,x Act of August 5-, 1909, and the Revenue Acts of 1913 and 1916, and the Revenue Act of 1916 as amended by the Revenue Act of 1917, also contained provisions for the deduction of a reasonable allowance for depreciation or exhaustion of property, and they also are silent as to the basis upon which the allowance shall be computed.
In the interpretation of these acts, the Commissioner first held that the allowance for depreciation should be computed on cost. In Treasury Decision 2137, dated January 30, 1915, it was held:
In determining the cost of the real estate, in most cases no segregation is made of the cost of buildings as separate and distinct from the cost of the grounds upon which such buildings stand. In such cases, where the actual cost of the buildings or improvements at the time they were taken over by the corporation can not be definitely determined, it will be sulKcient for the purpose of determining the rate of depreciation to be used in computing the amount which will be deductible from gross income to estimate the actual value of the buildings or improvements as of January I, 1909, provided such buildings were in existence at that time, and provided that the value placed upon such buildings shall not be in excess of the cost of such buildings, less an amount measuring the depreciation which had previously been sustained.
In Treasury Decision 2152, dated February 12, 1915, it was provided :
The rule which this office has established and which is very generally followed by corporations contemplates that an allowable depreciation deduction within the meaning of the Federal income tax law shall be computed upon the basis of the cost of the property and the probable number of years constituting its life.
In Regulations 33 (Revised), promulgated January 2, 1918, it was provided that:
Art. 163. * * * In determining the cost of the real estate upon which depreciable property is located it frequently occurs that no segregation is made of the cost of buildings as separate and distinct from the cost of the ground. * * * In such cases where the actual cost of the buildings or improvements * * * can not be definitely determined, it will be sufficient for the purpose of determining the rate of depreciation to be used in computing the amount which will be deductible from gross income to estimate the actual value at the time acquired of buildings or improvements if acquired after March 1, 1913, or the fair market price or value as of that date if the property was acquired prior to March 1, 1913, the value in either case to be reduced by the amount of depreciation previously sustained.
Thereafter, to wit, on August 23, 1918, Treasury Decision 2754 was promulgated and provided as follows:
A reasonable allowance for the wear and tear of property arising out of its use of employment in the business or trade is to be based on the cost of such *681 property or on its fair market price or value as of March 1, 1913, if acquired prior thereto.
From tbe date of that Treasury Decision to the present time the Commissioner has permitted the deduction from gross income of the allowance for the exhaustion, wear and tear of property to be based on the March 1, 1913, value where the property was acquired by the taxpayer before that date.
As above indicated, the Revenue Act of 1918 does not establish any basis for the computation of the allowance for exhaustion, wear and tear of property. The allowance is not referred to in the Act as depreciation, which, literally speaking, is a “ lessening in value.” In Article 161 of Regulations 45, the Commissioner refers to the allowance for convenience as “ depreciation ” and has provided:
The proper allowance for such depreciation of any property used in the trade or business is that amount which should be set aside for the taxable year in accordance with a consistent plan by which the aggregate of such amounts for the useful life of the property in the business will suffice, with the salvage value, at the end of such useful life to provide in place of the property its cost, or its value as of March 1, 1913, if acquired by the taxpayer before that date.
Is the allowance permitted by the statute a loss of the same character as a loss sustained by a taxpayer upon the sale of property and therefore to be computed subject to the rules of computation laid down by the Supreme Court in the cases of United States v. Flannery, and McCaughn v. Ludington, supra? In other words, is the basis for determining gain or loss laid down in section 202(a) of the Act also the basis for determining the allowance for exhaustion, wear and tear of property ? Is the exhaustion of the property arising from its use in the trade or business a “ disposition of property,” within the meaning of the last-named section of the statute? We are of the opinion that it is not. Any detriment suffered by a taxpayer through exhaustion, wear and tear of property may be more than offset by appreciation in the market value of the property subject to the allowance. The taxpayer is, nevertheless, entitled under the rulings of the Commissioner, and we think correctly, to a deduction from gross income on account of the exhaustion, wear and tear of property. We think that Congress provided for this deduction by reason of the fact that exhaustion, wear and tear of property is a factor in the carrying on of a trade or business generally taken into account by business men on the computation of gains and profits. Cf. Appeal of Even Realty Co., 1 B. T. A. 355.
As above indicated the statute provides for the deduction of a “ reasonable allowance ” for the exhaustion, wear and tear of property used in the trade or business. To the extent that this provision is applied to determine a deduction for exhaustion, wear and tear *682 of property where the property was acquired prior to March 1, 1913, and the value on that date was in excess of the depreciated cost on that date, we think it has been correctly interpreted by the Commissioner. In the appeal at bar the March 1, 1913, value was in 'excess of cost, and we think that the allowance for exhaustion may properly be computed upon that value.
The second question presented for the determination of the Board is the fair market value of the patent at March 1, 1913. What that value wa.s is a question of fact which must be determined in accordance with the credible evidence presented to us. The Commissioner, resorting to Hoskold’s formula, as outlined in the findings of fatít, has determined that value to be $457,939.10. On the other hand, the taxpayer contends that the patent had a fair market value at the basic date of between $1,250,000 and $1,500,000.
In determining the value of assets at any basic date, the valuation should be based upon facts known at the time. Subsequent earnings can not be used in the determination unless from past experience or known facts such future earnings might reasonably have been anticipated. We are convinced that such was the situation in the case at bar. Our findings of fact, which need not be repeated here, lead inevitably to that conclusion. The taxpayer’s business had passed far beyond the experimental stage at March 1, 1913. At that time the product manufactured under the patent was generally in nse in the steel industry. The evidence conclusively demonstrates that ferro-phosphorus was an absolute essential in the process of rolling sheet and plate from steel refined in the open hearth, a method of refining which was rapidly replacing the Bessemer process. Moreover, it was upon representations of responsible executives engaged in the steel industry that the taxpayer long prior to March 1, 1913, laid plans to enlarge his plant to a capacity of 13,000 tons per annum, plans which were actually consummated in the latter part of 1913. By 1916 the market was absorbing his full capacity production.
From a consideration of all of the facts, we are of the opinion that the value of the patent at March 1, 1913, was $850,000 and that the annual exhaustion thereof for the years in question is $80,563.49.
ArtjNdell not participating.