LOCK, MOORE & CO., LTD., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9295.   Promulgated August 8, 1927.

1. The deduction for loss of timber acquired prior to March 1, 1913, destroyed by storm in 1918, should be based on cost and not on the March 1, 1913, value where such value is in excess of cost.

2. In 1917 the petitioner paid a premium on a life insurance policy assigned to it as security by a debtor, the deduction of which from gross income was disallowed by the respondent on the ground that it was a capital expenditure. The policy was allowed to lapse in 1918 and the premium paid in 1917 was claimed as a deduction from gross income of 1918 in its income-tax return for that year either as a bad debt or as a loss. *Held*, that the deduction was properly disallowed.

3. The invested capital of a corporation may not be reduced in determining the extent to which a dividend is paid from current earnings of a year by a " tentative tax " theoretically set aside from such earnings pro rata over such year.

*E. B. Burling, Esq.*, and *Paul E. Shorb, Esq.*, for the petitioner.
*G. S. Borden, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits tax for 1918 of $616.36. The issues raised are (1) whether the deductible loss from the destruction of timber acquired prior to March 1, 1913, should be the cost or the March 1, 1913, value, which was in excess of the cost; (2) the deductibility from income of 1918 of the amount of a premium paid in 1917 on a life insurance policy disallowed as a deduction from gross income of 1917 on the ground that it was a capital expenditure—the policy having been allowed to lapse and becoming worthless in 1918; and (3) the correct invested capital for 1918, the claimed invested capital being reduced by reason of dividends paid in 1918 in excess of earnings available therefor at date of payments after allowance for a " tentative " tax.

FINDINGS OF FACT.

The petitioner is a Louisiana corporation.

During 1918, 5,750,000 feet of timber owned by the petitioner was destroyed by storm, which timber was acquired by the petitioner prior to March 1, 1913, at a cost of $4,447.05. The March 1, 1913, value was $34,789.23. The petitioner did not make a sale or other disposition of this timber; it was wiped out, destroyed, exhausted, and depleted by storm in 1918. In its income-tax return for 1918 petitioner deducted from gross income $34,789.23, representing the March 1, 1913, value of the destroyed timber, which amount was re-

duced by the respondent in the amendment of the return to $4,447.05, the cost thereof, and the difference was disallowed as a deduction.

Prior to 1918 R. A. Armstrong of Wharton, Tex., was indebted to the petitioner. In 1912 Armstrong assigned to the petitioner in part payment of his debt a life insurance policy. In 1917 the petitioner paid a premium of $304.44 on this policy. This deduction was disallowed by the respondent as a business expense deduction for the year 1917 on the ground that it represented a capital charge. The policy was allowed to lapse and become worthless in 1918 and it has never been reinstated. Neither the amount of the indebtedness nor the amount of the premium has ever been recovered by the petitioner.

During 1918 the petitioner paid the following dividends on the dates indicated:

| | |
|---|---:|
| January 31 | $10,000 |
| February 27 | 10,000 |
| March 28 | 20,000 |
| April 24 | 50,000 |
| May 27 | 20,000 |
| June 28 | 20,000 |
| July 30 | 20,000 |

In determining the amount of petitioner's income available for dividends during the year 1918 the respondent reduced the petitioner's income of $201,252.24 by $25,084.78, representing tentative Federal income and profits tax for the year 1918 and by $2,506.49, representing donations, or a total of $27,591.27. The result of this reduction in earnings was a reduction in petitioner's invested capital for 1918.

#### OPINION.

SMITH: The first point in issue is the basis for determining the amount of the deductible loss sustained in 1918 as a result of the destruction of 5,750,000 feet of timber by storm in that year. The petitioner claims that the deductible loss is the March 1, 1913, value thereof while the respondent claims that it is the cost, which was less than the March 1, 1913, value.

Section 202 of the Revenue Act of 1918 provides in part:

(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date. * * *

Section 234(a) of the same Act permits a corporation to deduct from gross income in its tax returns:

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;

\*         \*         \*         \*         \*         \*         \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence;

\*        \*        \*        \*        \*        \*        \*

(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: \*  \*  \*  such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. \*  \*  \*

The petitioner claims that the loss sustained is deductible under subdivision (9) of section 234(a), above quoted; that the timber was depleted by a storm in 1918; that since depletion may be taken upon the basis of the March 1, 1913, value, the deductible loss is the March 1, 1913, value.

Following the decisions of the Supreme Court in the case of *Goodrich* v. *Edwards*, 255 U. S. 527, and *Walsh* v. *Brewster*, 255 U. S. 536, respecting the basis for the determination of taxable gain or deductible loss in the case of property acquired prior to March 1, 1913, and sold or disposed of subsequent thereto, Treasury Decision 3206 and Treasury Decision 3209 were promulgated to bring the department regulations into harmony with the court rulings. Treasury Decision 3209 amended article 142 of Regulations 45 so as to read in part as follows:

\*  \*  \*  When loss is claimed through the destruction of property by fire, flood, or other casualty, the amount deductible will be the difference between the cost of the property and the salvage value thereof, after deduction from such cost the amount, if any, which has been or should have been set aside and deducted in the current year and previous years from gross income on account of depreciation and which has not been paid out in making good the depreciation sustained. In the case of property acquired before March 1, 1913, when the fair market value as of that date is lower than the cost, the deductible loss is the difference between such value and the salvage value thereof after deducting from the value as of March 1, 1913, the amount, if any, which has been or should have been set aside and deducted in the current year and previous years from gross income on account of depreciation and which has not been paid out in making good the depreciation sustained \*  \*  \*

The Bureau has consistently held that depletion signifies the process of using up a capital asset in the production of goods and that the provisions of law governing depletion allowances do not extend to the determination of deductible losses on account of storm, fire, or other casualty. The law itself would seem to make the distinction taken by the Bureau, for it specifically provides for losses on account of storm, fire, or other casualty. It is the normal shrinkage in the quantity of the timber due to its use that the depletion allowance of the statute is designed to take care of and not extraordinary losses due to casualty. It is believed that the position of the Bureau in making the distinction between depletion and losses should be adhered to and the tax liability of this company adjusted accordingly.

The Commissioner has consistently held that depletion signifies the process of using up capital assets in its business operations and that the provisions of law governing depletion allowances do not extend to the determination of deductible losses on account of storm, fire, or other casualty. The various income-tax laws from the Revenue Act of 1913, would seem to warrant the position taken.

We are of the opinion that the petitioner is not entitled to the deduction of the March 1, 1913, value of the timber destroyed by storm by virtue of subdivision (9) of section 234(a) of the Revenue Act of 1918. We are also of the opinion that the language of the stipulation which has been incorporated into the findings of fact—" The petitioner did not make a sale or other disposition of this timber; it was wiped out, destroyed, exhausted and depleted by storm in 1918 " does not serve to make the loss deductible under this subdivision. The fact is simply that the petitioner's timber was destroyed by storm in 1918 and the stipulation that it was " depleted by storm " is not controlling.

The petitioner does not rest its claim entirely upon the language of subdivision (9). It calls attention to the fact that the taxing statute provides no basis for the determination of a reasonable allowance for depreciation; that depreciation has always been allowed by the Commissioner upon the basis of the March 1, 1913, value, and that this Board has sustained the position of the Commissioner in *Appeal of J. J. Gray, Jr.*, 2 B. T. A. 672. The reasons for reaching that conclusion were clearly stated in the opinion. Congress has not provided in the Revenue Act of 1918 a basis for the determination of a deductible loss sustained through casualty. In the Revenue Act of 1921 it is provided that a corporation sustaining a loss arising from the destruction of or damage to property, where the property destroyed or damaged was acquired before March 1, 1913, may be computed upon the basis of its fair market price or value as of March 1, 1913. (Sec. 234(a) (4) of the Revenue Act of 1921.) In the Revenue Acts of 1924 and 1926, it is provided that the basis for the determination of a loss resulting from casualty shall be the same as that for the determination of a loss from the sale or other disposition of property. (Sec. 234(a) (4).)

The evidence indicates that the petitioner's investment in the timber was only $4,447.05. This amount was unquestionably a loss sustained during the taxable year. The purpose of the statute is to allow the actual loss. *United States* v. *Flannery*, 268 U. S. 98; *McCaughn* v. *Ludington*, 268 U. S. 106. The excess amount claimed was merely a loss of unrealized appreciation in the value of timber which accrued prior to March 1, 1913. We think that the deductible loss from casualty is the loss of an investment in property and not the loss of an un-

realized appreciation therein. If Congress had intended to allow such deduction it would have done so in explicit terms.

Congress indicated that the basis for determination of loss in the case of a " sale or other disposition of property " should be the March 1, 1913, value. (Sec. 202, Revenue Act of 1918.) *McCaughn* v. *Ludington, supra.* The petitioner contends that such basis is necessarily limited to a " sale or other disposition " of property; that its loss did not arise from a sale or other disposition of property and that therefore the basis is not applicable. Granting, but not conceding merit in this contention, we think that it is of no consequence. The actual loss in the case of property destroyed as a result of casualty is in no event any greater than the capital investment in the property.

In *Appeal of Jackson County State Bank,* 2 B. T. A. 1100, the Board had under consideration the loss sustained by the taxpayer as a result of the demolition of a building to make way for a new building. The question was whether the loss should be computed on the March 1, 1913, value, or on cost. In the course of the opinion the Board said:

The statute provides for a deduction on account of losses sustained during the taxable year. The expression " losses sustained " means actual losses and not paper losses. Where the March 1, 1913, value of property was greater than the cost, the actual loss sustained when the property is destroyed or demolished must be based on the cost of the property. Any other interpretation would be inconsistent with the principle announced in *United States* v. *Flannery,* 268 U. S. 98; and *McCaughn* v. *Ludington,* 268 U. S. 106. While in those cases losses on the sale of assets and not losses on account of destruction of property were involved, the basic principle is the same. In the case of a loss on the sale of property the statute expressly provides that, for the purpose of ascertaining the gain derived or loss sustained in the case of property acquired before March 1, 1913, the basis for determining the deductible loss is the March 1, 1913, value. Yet the court held that the March 1, 1913, value was merely a guidepost to determine whether a loss had been sustained since March 1, 1913, and that the loss was not to be based on March 1, 1913, value unless that value was less than cost. The principle applies with equal force in the case of a loss on account of destruction of property. The basic principle of the decisions in the *Flannery* and *Ludington* cases was that the March 1, 1913, value of the property subsequently disposed of was not the fixed basis for computing the loss.

The decision upon this point must be in favor of the Commissioner.

The second question in issue is whether the petitioner is entitled to deduct from the gross income of 1918, $304.44, representing a life insurance premium paid by it on a policy assigned to it as security by a debtor, which policy the petitioner permitted to lapse in 1918 and which became worthless in that year. It appears that the Commissioner disallowed the deduction of the premium paid in 1917 on the ground that it was a capital expenditure. The petitioner, therefore, claims the deduction as a loss in 1918.

The record fails to show the character of this policy whether it was a term insurance policy or whether there was any surrender value on the policy. We can not determine whether the action of the Commissioner was correct in disallowing the deduction from the gross income of 1917 of the premium paid in that year. It was apparently paid for the protection of the petitioner during that year. If this is so, there is no element of capital expenditure in the payment and there is no evidence that the petitioner acquired a capital asset as a result of the payment. Life insurance premiums are paid for protection and there is always an element of expense in the premium. As was stated in *Appeal of E. A. Armstrong*, 1 B. T. A. 296:

* * * The cost of earned life insurance is not a capital investment any more than the cost of earned fire or marine insurance. It is a current expense, and should not be treated as anything else.

Upon the evidence we can not find that the petitioner sustained a deductible loss in 1918 as a result of the lapsing of the policy.

The third point in issue is whether the earnings available for the payment of dividends during 1918 shall be computed after the deduction therefrom of an amount or amounts representing tentative taxes payable for 1918 upon the income of that year. This is the same question which was decided adversely to the contentions of the petitioner herein in *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135. In accordance with that decision it is held that the reduction of invested capital by a " tentative " tax theoretically set aside out of earnings prorated over the year 1918 was in error.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*