*138 OPINION.
MoRRis:
The first allegation of error relates to the failure of the respondent to allow a deduction for obsolescence, exhaustion, wear and tear or loss of a patented process which became, as the peti *139 tioner alleges, exhausted and obsolete and therefore a complete loss in the year 1918. The respondent contends that the deduction claimed should not be allowed for the reason that there is no competent evidence to support the March 1, 1913, value as contended for, and that even assuming that said value has been clearly evidenced, the facts do not justify the deduction as obsolescence under section 234 (a) (7), the loss, if one has been sustained, is a loss of useful value, not obsolescence, and therefore the basis for determining the deduction is the cost of the patent and not its March-1, 1913, value.
If a deduction is allowable, authority therefor must be found in one of the following subdivisions of section 234 (a) of the Revenue Act of 1918:
(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
* ⅜ * * ⅝ # HC
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;
* * * * * * ⅜
(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.
We disagree with counsel for the respondent that the value of the - patent is unsupported by the evidence. Considering the earnings of the petitioner for the several years prior to March 1, 1913, which are unquestionably in large part attributable to the patented process, the marketability of its product at that time, the lack of competition, and the future prospects of the business after that date, together with the positive testimony of men who were at all times during the life of the petitioner in intimate contact therewith, we have found as a fact that the patent in question had a value at March 1, 1913, of $275,000.
The respondent offered copies of certain letters patent in evidence for the purpose of rebutting the testimony that the petitioner had a monopoly on the manufacture of purified bleached cotton fibers from low-grade cotton linters. No evidence was offered as to whether the processes covered by these patents were in use, or if they were, that they were identical or even similar to those employed by the petitioner. We can, therefore, attribute no value to this evidence.
It must be conceded at the outset that the manufacture of gun cotton base was hopelessly imperiled at the close of the World War in 1918, due to the oversupply of gun cotton and gun powder, enough, it was testified, to supply the needs of the world for four or five years, and a consequent sudden cessation in demand for that product. In 1917 the petitioner believed its business would be absolutely at an end and its plants valueless at the close of the war. Immediately after the signing of the Armistice its plants were closed down and operations were never thereafter resumed, except for a futile attempt *140 which was made during 1919, 1920, and 1921 to divert its product to the manufacture of paper. We must also concede that the success or failure of the petitioner depended entirely upon the product manufactured under the patent which it claims became obsolete in 1918. But do those factors, without more, render the patent itself obsolete, within the meaning of the statute?
Webster’s New International Dictionary defines “obsolescent” or “ obsolescence,” “ to wear out gradually; to fall into disuse,” and the word “ obsolete ” is defined to mean “ no longer in use; disused; neglected; as, an obsolete word; an obsolete statute.” Obsolescence as used in the statute is the state or process of becoming obsolete and the provision allowing a deduction therefor is intended to care for losses of capital which take place over a longer period than the taxable year. William Zakon, 7 B. T. A. 687. The state of obsoleteness is reached when the property which can not be used for any other purpose is no longer economically useful for the purpose for which it was acquired, Frederick C. Renziehausen et al., 8 B. T. A. 87, and is therefore abandoned. It could be foreseen, after the signing of the Armistice, that the market as a base for explosives, for the product manufactured under the patent was completely wiped out during the remaining life of the patent. The patent, or the process protected thereby was not abandoned, however. While the petitioner closed its plant in 1918, it engaged in experimental work in the hope that it would succeed in diverting its product to the manufacture of paper, a use for which the petitioner had been more or less successful in disposing of its product prior to the execution of the contract with the du Pont Company. We are satisfied that had the petitioner been convinced in 1918 that its patent was obsolete for all purposes, it certainly would not have spent $50,000 or more in trying to revive a former use. In this connection it is interesting to note the language used by this Board in Yough Brewing Co., 4 B. T. A. 612, wherein the Board said:
* * * It is urged that the taxpayer should not be made to suffer because it in effect attempted to increase the amount of salvage when it knew there was small chance of successful operation. This argument presuppose.s that the taxpayer was attempting only to realize salvage, a premise with which we do not agree. We must presume that the taxpayer’s officers were exercising their best business judgment and that in so doing they saw a reasonable prospect of a profitable business in near beer. We can not credit them with power to prophesy in 1919 that the public would not take to near beer. If that fact could have been foreseen would they have gone into the near beer business? We think not. Because their expectations for profitable business were not realized, they can not now maintáin that the plant was obsolete when they began making near beer.
Considering all the facts and circumstances we are of the opinion that the patent did not become obsolete during the year 1918.
*141 In our decisions relied upon by the petitioner the assets claimed to have become obsolete or valueless within the taxable year, upon which a claim for deduction was based, were tangible property, definitely discarded or abandoned within the taxable year, and either completely charged off in the books^of account or the value thereof written down to a junk or scrap value. Here the value of the asset was not carried in the books of account, and for that reason could not have been charged off within the taxable year as was done in those cases, but the patent was not abandoned. The product was manufactured thereunder, and shipped to various paper mills in an attempt to establish a market in that trade.
We are also of the opinion that the petitioner is not entitled to a deduction under section 234 (a) (4) of the Revenue Act of 1918. As already pointed out, the patent was not discarded during 1918, nor j at the close of that year was it established that it was valueless. Tax i liability is determined upon the basis of annual accounting periods,' and when a determination is made for a given year, the facts and conditions occurring and existing during such year must be the basis upon which we predicate our action. H. P. Robertson Co., 14 B. T. A. 887.
We found as a fact that the patent had a March 1, 1913, value of $275,000. The petitioner is therefore entitled to a deduction for exhaustion based on that value and a life extending to July 20, 1920. J. J. Gray, Jr., 2 B. T. A. 672.
The second allegation of error herein was expressly withdrawn by petitioner’s counsel at the hearing of this proceeding.
L. S. Ayers & Co., 1 B. T. A. 1135, is determinative of the third allegation of error herein.
Reviewed by the Board.

Judgment will be entered under Rule 50.

Trammell dissents.