Appeal of **L. S. AYERS & CO.**          Docket No. 1217.

1. The invested capital of a corporation may not be reduced, in determining the extent to which a dividend is paid from current earnings of a year, by a "tentative tax" theoretically set aside out of such earnings pro rata over such year, because the income and profits tax does not become due and payable, and, therefore, does not accrue, until the following year.

2. In determining the invested capital of a corporation for 1918 and the extent to which surplus at the beginning of the year is reduced by a dividend, the actual earned net income, as shown by the corporation's books, is first subject to distribution, whether it corresponds to actual taxable income or not, and only the remainder, if any, is subject to deduction from surplus at the beginning of the year.

Submitted March 16, 1925; decided May 20, 1925.

*John E. McClure, Esq.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a determination by the Commissioner of a deficiency in income and profits taxes of $2,707.16 for the year 1918.

FINDINGS OF FACT.

The taxpayer is an Indiana corporation, with its principal office in the City of Indianapolis, Indiana.

The taxable income for the year 1918 was $253,606.74. The net income as shown by the books of account, due regard being had to items not allowable as deductions in determining taxable income and other adjustments, was $240,750.23.

On April 1, 1918, the taxpayer declared a dividend of $120,000. On that date the 1918 taxable net income, prorated for the period of the fiscal year up to April 1, 1918, was $63,401.68. The corresponding book net income amounted to $60,187.56.

The Commissioner, in computing the invested capital of the taxpayer for the year 1918, made adjustments, complained of in this appeal, as follows:

1. He used the correct net income as shown by the books without regard to statutory adjustments, and did not use the taxable net income in determining the amount of earnings to the date of the dividend above mentioned.

2. He reduced the taxpayer's invested capital by assuming an obligation to pay income and excess-profits tax for the year 1918 in the sum of $47,300.98, which sum, when prorated to the period up to April 1, 1918, resulted in reducing the amount of income available for dividends in the amount of $11,663.28, reducing the invested capital by that amount.

The taxpayer also alleged an error in the amount of tax heretofore paid as claimed by the Commissioner. The Commissioner, in determining the deficiency, credited the taxpayer with the payment of $44,966.92, whereas the taxpayer claimed to have paid $45,668.18, and the Commissioner concedes error in this particular.

DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on ten days' notice, in accordance with Rule 50.

OPINION.

JAMES: Two questions are presented for the determination of the Board in this appeal; first, whether, in determining the amount of income available for the payment of a dividend, the actual net income should be used rather than the statutory taxable net income; and, second, whether earnings during the year available for distribution as dividends should be reduced in computing invested capital by an assumed pro rata accrual of income and profits taxes.

On the first point, we are clear that the Commissioner must be sustained both upon reason and upon the basis of decisions already made by this Board.

Section 326 of the Revenue Act of 1918, so far as relevant, provides:

(a) That as used in this title the term "invested capital" for any year means   *   *   *
(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year   *   *   *.

It is clear that, as to any year subsequent to 1918, the earned income of the corporation, whether subject to tax or not, would be included in invested capital for such subsequent year. *Appeal of National Grocer Co.*, 1 B. T. A. 688. Likewise, in determining the invested capital of the taxpayer for the year 1918, and the extent to which surplus at the beginning of the year is reduced by a dividend, the actual earned net income of a corporation is first subject to distribution, whether it corresponds to actual taxable income or not, and the remainder, if any, only is subject to deduction from surplus at the beginning of the year.

On the second point, both the taxpayer and the Commissioner have submitted exhaustive briefs. The points which have been made as a matter of law are as follows:

1. That the Revenue Act of 1918 did not become effective until February 24, 1919, and, therefore, no computation during the year 1918, respecting any tax liability in and for that year, could be made under that Act.

2. That general taxes accrue when they become due and payable, and no deduction from invested capital is necessary until that time.

It will be noted from the foregoing that the first point, if decided in favor of the taxpayer, disposes of the question here at issue only as to the year 1918. It leaves undecided the validity of the so-called "tentative tax computation" with respect to the years 1919, 1920, and 1921.

Whether the tentative tax computation is valid for the year 1918, and whether there was impairment of surplus on account of such tax, appears to have been clearly decided by the Circuit Court of Appeals of the Seventh Circuit in the case of *Schuster Co.* v. *Williams*, 283 Fed. 115, in which it was held that an act of the Wisconsin legislature, passed during 1919, imposing a tax upon 1918 in-

come, was not deductible in computing for Federal tax purposes the taxpayer's net income for the year 1918, since the Wisconsin tax was not and could not be an obligation during that year. To the same effect are *Overland Sioux City Co.* v. *Clemens* and *Clark* v. *Clemens*, 179 N. W. 154. The facts in the *Clemens* cases are that the company on July 1, 1917, had on hand net earnings of that year in the sum of $17,084.72, and a surplus of $881.33. On that date the company declared a dividend of $15,000, its remaining surplus after the dividend being $2,966.06. Clark purchased from Clemens 100 shares of stock held by him on July 27, paying a consideration which took duly into account the dividend theretofore declared. Thereafter, on October 3, 1917, Congress passed the Revenue Act of 1917, and under that Act a tax on the company was imposed, and subsequently collected, in the sum of $8,513.49. Both the corporation and Clark undertook to recover from Clemens the amount of tax so imposed, which was for a fiscal year ended July 1, 1917. In deciding against the plaintiffs the court said:

> If the company paid out the dividend or any part of it illegally, it may be conceded that the portions so advanced to the shareholders might be recovered by the company as of money had and received. But was the dividend or any part illegal? No one will so pretend unless rendered so by the act of Congress approved October 3, 1917. That act did not undertake to undo anything which had gone before. It did not require the payment of the excess profits war tax exacted from any specified fund or income of any particular period. The only feature of the act in any sense retroactive is the portion declaring the net income for the entire year 1917 the unit on which the tax levy should be made. This tax, not the income, is to be apportioned where the taxable year is not the calendar year, but the fiscal year, of the corporation. This appears from section 200 of the act:
>
>     *       *       *       *       *       *       *
>
> The inclusion of proportion of the tax in the report of the period ending July 1, 1917, is purely administrative, having solely to do with the levy and collection of the tax long after the approval of the act. How, then, can it be said that the enactment of this act had any bearing or effect on the dividend declared or transfer of the stock? Counsel have argued as though the tax must have been paid from the earnings of the company prior to July 1, 1917. The act contains no such requirement, and, as the tax was not payable until nearly a year later, there would seem to be no ground for such an inference. Nor is there any basis in the record for the suggestion that to discharge the tax the company must have encroached on its capital. The record warrants no such deduction. For all that appears, the company's earning capacity may have continued as before and have been ample out of which to have discharged the tax long before it became payable. As indicated, the act was not retrospective, save as including the net income of the calendar year, prior to October 3, 1917, with that of the portion of the year following in making up the net income on which taxes were to be collected and levied, and can not be construed to have affected in any manner the legality of dividends paid or the sale of stock; indeed, for that is it alleged there may have been no income during the first half of 1917. The exaction of taxes was prospective, and not such as likely to impair the company's capital, at least not so alleged. What we have said disposed of the other error assigned.
>
> The trial court's ruling that none of the several petitions stated a cause of action is affirmed.

If the tax imposed by Congress under the Revenue Act of 1917 did not constitute such an impairment of surplus as to invalidate a declaration of dividend made prior to the passage of the Act, how can it be said that earnings during the year 1918 were *pro tanto* set aside or subject to be set aside for the payment of a tax not then existing and not brought into existence until February, 1919?

Nor can it be said that the earnings of 1918 were subject to be reduced in the determination of invested capital on account of the tax imposed by the Act of October 3, 1917, for that Act never applied to the year 1918, but was repealed before a tax imposed under it became due and payable.

The second point raised by the taxpayer goes into the whole question of the time when general taxes accrue. The Board has had occasion to consider the accrual of taxes in the *Appeal of Russell Milling Co.*, 1 B. T. A. 194; and the *Appeal of Jamestown Worsted Mills*, 1 B. T. A. 659.

In the *Russell Milling Co.* appeal, the taxes under consideration were property taxes imposed by the State of Kansas and its municipal subdivisions. In that appeal it was held that taxes did not accrue until they became due and payable, and in so deciding, the Board said:

It is not necessary to enter into a discussion of when taxes are accrued further than to say that they can not be accrued until they become due, * * *.

In the *Appeal of Jamestown Worsted Mills, supra*, the tax in question was the New York State Corporation Franchise Tax, which is a special tax imposed upon domestic corporations as a license for the privilege of corporate existence, and upon foreign corporations for the privilege of doing business in the State. It is measured by income. The tax is payable in advance from November 1st of each year; is imposed upon the income of a completed fiscal year prior to November 1st, and becomes due and payable upon notice and demand from the Tax Commission subsequent to November 1st. · It was there held that, being in the nature of a license, the tax accrues as of November 1st each year, and the decision, therefore, does not govern the accrual of a general tax.

We are dealing here with that class of taxes imposed generally for the support of government upon its citizens, carrying no special privileges and no specific consideration for their imposition. Such taxes are annually recurrent charges. They are not imposed upon doing of business, upon specific business transactions, upon purchases or sales, or the happening of any specific events. The proceeds of such taxes are used for the general support of government. They are measured sometimes by property, sometimes by income, sometimes they are capitation taxes; but in all such taxes the distinguishing characteristic is that they are a general impost and contain no element of the conferring of a privilege for which a charge is made. Taxes of this character require that an assessment be made to impose the tax. That is, the value of property must be determined, the individual subject must be found in the case of a capitation tax, or the income must be determined in the case of an income tax. After the property has been valued, the individual found, or the income determined, there follows the process of ascertaining the tax against the property so valued, or against the individual, or against the income as determined. Thereafter such taxes become due upon a date certain, and the machinery of collection starts. At that time, and only then, under the decided cases, do such taxes accrue, become due and payable, or attach as liens or charges on the person taxed or the property subject to valuation and assessment.

This question has been decided by the United States Supreme Court in three significant cases, all dealing with estate or inheritance taxes imposed by Federal authority.

In the case of *Clapp* v. *Mason*, 94 U. S. 589, there was involved the question when the Federal succession tax of 1864 accrued. This taxing statute was repealed in 1870. The plaintiff's testator died in 1867, but the plaintiff's succession was dependent upon the life estate of the widow of the testator, who did not die until 1872. It was held in this case that the tax upon the succession of the plaintiff did not accrue prior to the repeal of the act, and, in so holding, the court said:

It is manifest that the right does not accrue until the duty can be demanded, that is, when it is made payable; in other words, at the end of thirty days after becoming entitled to possession.

\*      \*      \*      \*      \*      \*      \*

In the case we are considering, the successor did not become entitled to the possession or enjoyment of the estate until the death of the widow, which occurred on the seventeenth day of June, 1872. The duty imposed extended only to successions which occurred prior to Aug. 1, 1870. The saving clause, therefore, does not reach the case.

The same estate was before the court on a different phase in *Mason* v. *Sargent*, 104 U. S. 689, which affirmed and sustained the earlier decision. Again, in *Sturges* v. *United States*, 117 U. S. 363, the same statute was construed and the earlier construction affirmed. In this case the testator died prior to the repeal of the statute imposing the succession tax, leaving $100,000 to his son upon his attainment of the age of 21 years. The son attained the age of 21 upon February 21, 1872, after the repeal of the act. It was again held that the tax had not accrued prior to the repeal of the act and could not be imposed.

In *United States* v. *Woodward*, 256 U. S. 632, in determining when an estate tax accrued and became deductible in determining the net taxable income of a taxpayer, the court again held that such taxes accrue when they become due and payable, and that they do not accrue at the moment of death of the decedent. In so holding, the court said:

It becomes due not at the time of the decedent's death, as suggested by counsel for the Government, but one year thereafter, as the statute plainly provides.

Nor is the law different with respect to income taxes, in so far as the courts have interpreted them.

What constitutes an accrual of income tax or of excise taxes based upon income appears first to have been before the courts in *Butterick Co.* v. *United States*, 240 Fed. 539. The holding of the court with respect to the point here involved is as follows:

The Corporation Excise Tax Act of 1909 imposed no tax upon dividends received by corporations from stock of other corporations subject to the corporation excise tax, and while this act was repealed by the Income Tax Act of October 3, 1913, the latter act contained the proviso that:

"The repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil case before the said repeal or modification; but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made." 38 Stat. 202.

I am inclined to think that the foregoing saving clause was intended to relate only to rights and liabilities in respect to taxes which had accrued under the act of 1909 and that it was not intended to cover excise taxes upon corporations for the two months of January and February, 1913. The act of 1913 must be regarded as entirely supplanting the former act as to all taxes which the act of 1913 imposes. Consequently excise taxes for the first two months of 1913 were a new tax, subject only to such exemptions or limitations as might be found in the later act. This seems clear from the provision in the act of 1913 that the excise tax for those two months was to be "ascertained in accordance with the provisions of subsection 'G' of section 2 of this act." In that section Congress made no provision for the exemption of dividends upon the stock of other corporations which had paid a tax. This being the case the taxes for these two months while measured by the income of corporations accruing therein must be paid without regard to exemptions in the former act.

In the case of *Anderson* v. *United States*, 60 Ct. Cls. 106, the court decided that the munitions tax imposed by the Act of September 8, 1916, upon the net income of manufacturers of munitions, accrued not ratably over the year, but when it became due and payable. In so deciding, the court said:

It is manifest that the munitions tax which was measured by the 1916 income of this corporation became due and payable, and was in fact paid, in the year 1917. It is, therefore, proper deduction in its income tax return for 1917 under the provisions of the Revenue Act of 1916, *supra*. The tax paid by the corporation for the year 1916 did not accrue until it became due and payable. It did not become due and payable until 1917, and was then paid.

A further, and we believe, decisive argument against the position of the Government in this case is the complexity which necessarily accompanies the computation of invested capital, and therefore the computation of the tax under the method followed by the Commissioner. The definition of invested capital as provided by Congress in section 326 is not complicated, and is the subject of ready computation. It provides:

Sec. 326. (a) * * * (1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, * * *;

(3) Paid-in or earned surplus and undivided profits; *not including surplus and undivided profits earned during the year;*

(4) Intangible property bona fide paid in for stock or shares * * *. (Italics ours.)

The significant feature of the above provision with respect to the instant appeal is that earnings of the current year then being taxed are specifically excluded from invested capital. The Commissioner, however, by his formula of decreasing surplus on account of a tax later to accrue, is taking into account in the computation of invested capital an element of expense or outgo, while forbidden to offset that element by the income of the year. Every inference in the statute is against such a construction.

The complexity of the computation as made by the Commissioner is appalling. After determining invested capital at the beginning of the year, the Commissioner then takes into account the dividends declared during the year and after the first sixty days. He assumes that such dividends are paid out of earnings prorated for the year to that period up to the date of the dividend. Dividends in excess of the earnings so prorated from the date of the dividend are

treated as dividends of surplus of prior years, and excluded from invested capital. With the computation thus far we do not disagree, but the Commissioner goes farther. Of the earnings of the period up to the date of the dividend, the Commissioner sets aside a pro rata portion as an obligation to the United States, accrued at that time for the income and excess profits tax of the very year under consideration. That amount he deducts from the earnings and then makes the comparison with the dividends. This process necessitates the computation of what the Commissioner calls a "tentative tax" based not upon the facts to the date of the dividend, but the facts as disclosed at the close of the year, prorating the earnings and prorating the tax. At the date of the dividend, the taxpayer had on hand a surplus available for dividends, but there is no assurance that there would be earnings for the remainder of the period, or that there would not be losses which would extinguish the earnings and produce no tax at all. The result is, therefore, to require the directors to have placed themselves in a position with respect to the declaration of a dividend which they could not anticipate at the time the dividends were declared.

This kind of mathematical gymnastics was before the court in the case of *Edwards* v. *Slocum*, 287 Fed. 651, affirmed, 264 U. S. 61.

In this case the Circuit Court of Appeals, in deciding that a tax might not be measured by itself, said:

We have treated this formula in a footnote; it is only legally important in that it has produced the argument that any method of taxation, or of working out taxes, that requires so much algebra "must be wrong." We need not go so far, but do hold that the presumption is that Congress intended a simpler method—one that a plain man could understand. Algebraic formulæ are not lightly to be imputed to legislators.

The Supreme Court, in discussing the case on appeal, said:

The Government offers an algebraic formula by which it would solve the problems raised by two mutually dependent indeterminates. It fairly might be answered, as said by the Circuit Court of Appeals, that "algebraic formulæ are not lightly to be imputed to legislators," but it appears to us that the structure of the statute is sufficient to exclude the imputation. As further remarked below, the theory departs from the long established practice of the law not to regard the incidence of a tax in the levying of a tax, * * *.

What is said above with respect to the formula in the *Slocum* case is equally pertinent to the formula here in question. It is not to be assumed that Congress intended the computation of invested capital to be made unnecessarily complex by a strained interpretation which reduces the earnings of the year otherwise available for distribution on account of a tax thereafter to be imposed.

The Commissioner argues that the income tax is a true charge upon the income of the year for which it is determined, and cites in support of that position *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; 158 U. S. 601; *Pennsylvania Cement Co.* v. *Bradley Contracting Co.*, 274 Fed. 1003; *United States* v. *McHatton*, 266 Fed. 602; and *In re Brezin*, 297 Fed. 300. The three last-named cases have to do with the liability for the tax in the case of the distribution of the assets of the taxpayer prior to the date of the imposition of the tax. This may readily be conceded without affecting the principle here involved. It may be that stockholders in receipt of dividends in derogation of the rights of the United States

to collect a tax may be compelled by appropriate action to assume liability for the tax, although that tax became due and payable and accrued after the distribution of the dividend, whereby the assets of the corporation were so depleted that it was rendered unable to respond to the payment of the tax. The *Pollock* case has no bearing whatever upon the issue here, namely, when the income tax attaches.

For the foregoing reasons, we are of the opinion that the invested capital of the taxpayer should not be reduced in the sum of $11,663.28, and that the deficiency should be recomputed as set forth in the decision.