*964 OPINION.
Siefkin :
The petitioner has conceded the correctness of the action of the respondent "in reducing invested capital because of tax liabilities for preceding years under article 845 of Eegulations 45, and section 1207 of the Eevenue Act of 1926. In that respect, therefore, we approve the determination of the respondent.
The respondent concedes that the facts with respect to the reduction of invested capital for the year 1918 in the amount of $16,087.56 and the year 1919 in the amount of $18,038.58 bring such action of the respondent within the principle of the decision of this Board in L. S. Ayers & Co., 1 B. T. A. 1135, and other similar cases. In that respect, therefore, we hold that invested capital was improperly reduced by such amounts.
The sole remaining issue in the proceeding relates to the action of the respondent in determining a profit on the sale of land and turpentine rights in 1919. The petitioner was in the lumber business and purchased the fee simple title to the Bagdad tract and the option rights of D. P. Eay with a view to immediately selling the land and the turpentine rights, reserving to itself only the right to cut the timber. In acquiring the properties with that end in view, it expended $181,128.85 and at substantially the same time realized $125,000. The petitioner’s contentions are that during 1919 it thus acquired timber for the amount of $56,113.39; that the land, timber and turpentine rights constituted a single unit which was not sever-able and as to which no segregation could be made, and that no profit could be realized until an amount in excess of the total cost had been received; that the respondent erred in computing the profit on the sale of the land and turpentine rights by not including in the cost thereof the granting of the turpentine rights on 1,040 acres to Eay; and that the fair market value of the timber at the time of purchase by the petitioner was less than that of the turpentine rights, or than the amount used by the respondent in his allocation of cost for the purpose of computing the profit realized from the sale in question. The respondent, on the other hand, insists that the method of allocating the cost of turpentine rights purchased together with land and timber had been recognized by the Board in S. P. Weaver, 2 B. T. A. 976, and S. A. Hinely, 2 B. T. A. 1027.
*965 We reject petitioner’s contention that the land, timber and turpentine rights were not severable. Petitioner’s own contention rests upon the fact that they were severable, as we believe the evidence shows that they were.
This leaves for consideration the question as to whether the respondent’s allocation, Avhich resulted in the profit, is improper in the light of the facts in the case.
A timber valuation engineer testified for the respondent in explanation of the computation which resulted in the profit here in question. His testimony was based upon his general knowledge of similar timberlands, upon the condition of the timber, land and turpentine market during the year 1919, and upon a personal inspection of the tract in question in January, 1927. Plis opinion as to the values of the timber, turpentine rights, and land was reflected in the computation of the respondent set forth in our findings of fact above. He gave as his opinion that the fair market value on August 14, 1919, of the fee simple title acquired by the petitioner on that date was $278,500, although the petitioner paid $181,128.85. He divided such total valuation into separate valuations for the turpentine rights and land of $98,500, and timber of $180,000. He further arrived at the amount of $98,500 by placing the value as of August 14, 1919, of $62,500 on the turpentine rights, and $36,000 on the land.
It should be noted that the valuations upon which the proposed deficiency rests are not only based upon after-acquired knowledge, since, in such valuations, the amount of timber actually cut is taken rather than the amount estimated in 1919, but the assumptions as to value are contrary to the known facts. One assumption is that although the fee simple title to the property was acquired for approximately $181,000 in August, 1919, it was, in fact, worth $278,500. Another assumption is that the land and turpentine rights (excepting those transferred to Kay) were of a fair market value of $80,040 on August 14, 1919, although they sold, about one month later, for $125,000. These assumptions are made in spite of the facts and not because of them. There is nothing in the record to suggest that the purchase price of $181,000 was not a transaction at arm’s length and for a fair consideration upon the facts known at that time. It is further clear that the market value did not change materially, if at all, within the period of August 14, 1919, and September 23, 1919, and the respondent’s engineer so admitted.
Upon all the proof in the proceeding we are satisfied, not only that the respondent’s action was erroneous, but also that the petitioner was correct and that its computation was based upon the actual facts as evidenced by an arm’s-length transaction, and the tract on *966 the date of purchase was worth no more than on the date of sale, regardless of the severance of the various elements.
In our opinion the cases cited by the respondent as authority for the action taken in this case are in no sense authorities under such facts, and the determination of the respondent, in so far as a deficiency is asserted on account of the $44,960 profit, must be disapproved.
Reviewed by the Board.
Judgment will he entered on 15 days’ notice, under Bule 50.