*1233 OPINION.
Green:
The respondent moved to dismiss the proceeding as to 1917 and 1918, upon the ground that as to those years the Board is without jurisdiction for the reason that no deficiencies were determined for those years. The motion is granted. See section 274(g) of the Revenue Act of 1926, and Appeal of Cornelius Cotton Mills, 4 B. T. A. 255.
The issue of including in invested capital for the years 1919 and 1920 a part of the income and profits taxes for the years immediately preceding is decided adversely to the petitioner. See Appeal of Russel Wheel & Foundry Co., 3 B. T. A. 1168; D. B. Scully Syrup Co. v. Commissioner, 10 B. T. A. 90.
*1234 The respondent was in error in reducing the earnings available for distribution in 1920 by a tentative tax for the year 1920, in determining the amount of the dividends paid from surplus. See Appeal of L. S. Ayers & Co., 1 B. T. A. 1135.
The petitioner contends that inasmuch as its lands vary in value as indicated by the sales prices ranging from $5 to $40 per acre, it is unfair to place an average value on all of the lands and compute the profit resulting from sale by using the average value as the basis. We feel that there is considerable merit in this contention, for obviously the March 1, 1913, value of 40 acres of land located adjacent to a thriving community with good roads and convenient access to schools, churches, stores, etc., was greater than the value of the lands not so fortunately situated, and consequently when this land is sold the profit thereon should be computed by using the actual 1913 value as the basis rather than the average value. A sale of this same parcel at its March 1, 1913, value may result in no actual profit, but if the average value is used in the computation of gain, an apparent taxable profit will result. We know of nothing in the statutes which requires the use of an average value as the basis under circumstances such as exist here. The petitioner’s proof, while it sets forth three classifications of land and the estimated number of acres in each, does not give us the legal descriptions of the various tracts or parcels so classified, and for-this reason it is impossible to apply the principle for which the petitioner contends, inasmuch as we can not determiné from this record the actual March 1, 1913, value of the different parcels sold.
There are two major questions in the case, both relating to value, and of these we will first dispose of the one relating to value of the lands owned by the petitioner on March 1, 1913. The evidence upon this question is so confusing and so conflicting that we find it impossible to draw any definite conclusions therefrom and we therefore feel that the presumption of correctness which is attached to the Commissioner’s determination of value has not been overcome, and accordingly affirm the valuation fixed by him in the amount of $163,000. .
The second major question is as to the value of the timber on March 1, 1913. The evidence relating to this question is very voluminous and conflicting. In most of the instances the witnesses confine their answers to the value per thousand feet on March 1, 1913 The weight to be given to a witness’s testimony as to the value per thousand feet obviously depends in part upon the factors which he had in mind at the time he gave his testimony as to value. For example, if the witness’s testimony is based upon the cruiser’^ estimate of the number of thousand feet in the tract, this value per *1235 thousand feet will be entirely different than if such value was based upon actual measure or mill tally taken as the boards actually came from the mill. In between these two places of measurement there are numerous other/3, such as the scale made at the time the trees are felled, which is known as the woods’ scale; the scale taken at the landing before the logs are loaded on the cars, this being called the landing scale; the scale taken before the logs go to the mill, this being called the slip scale; and other types of scaling or measure not discus,sed in the record of this case. It is a matter of common knowledge among timber men that the mill scale or tally overruns the estimates as they were made in 1913 and prior years. The percentage of overrun, however, is a decidedly variable factor, depending, first, upon the accuracy of the cruiser, second, upon the type of scale or rule used, third, upon the timber which at the time of the cruise was regarded as merchantable, fourth, the closeness of the cut, and, fifth, the method,s of manufacturing or milling the lumber. Unless the witness is testifying as an expert in response to hypothetical questions in which these variable factors are accurately specified, it is clear that his testimony is of little value until he has set forth the exact factor/3 entering into his computation of value. In this case the situation is further confused by the fact that the overrun exceeded the normal overrun by approximately 15 per cent and by the further fact that this overrun was not consistent as to species of timber in that on the hemlock saw logs the cut exceeded the estimate by 10 per cent; on the hardwoods and pine the cut exceeded the estimate by 63 per cent; and on the pulp wood the cut was les,s than the estimate by 90 per cent. The cause of these variations from the average cannot be determined from the record. If they are due to closer cutting and a more complete utilization of the cut in the later years, they of course have little to do with the the value on March 1, 1913. If, however, they are due to increases in the original estimates made by the cruisers, they have much to do with the actual March 1, 1913, value.
The same difficulties are present in the case of comparable sales which one party or the other seeks to have used as the measure of value. The record in this case contains more or less complete evidence of many sales. In many instances this evidence was not sufficient to enable us to determine whether or not the sale was comparable and in only one instance was the evidence wholly complete,' and as to that sale the individual who made it testified that in his judgment the sale price was in excess of the market value.
No effort has been made to summarize all of this voluminous and conflicting testimony. We have sorted it and weighed it as best we *1236 could and have arrived at a determination of value, and we hold that the value of the petitioner’s timber on March 1, 1913, was $937,839. The petitioner and the respondent seem to agree that the amount of timber was 223,295,000 feet — applying these factors one to the other we arrive at a unit rate of $4.20 per thousand.
Because of the inordinate amount of time and effort expended upon this case in an attempt to arrive at a valuation of this timber, we feel impelled to say that our work would be far simpler and the likelihood of error in our valuations greatly reduced if qualified witnesses were placed upon the stand and asked to give their estimate of the value of the timber on a particular tract at March 1, 1913, rather than their value of the timber per thousand feet, and it is hoped that in the future the testimony will come in such a way that we wil l not be called upon to assume the factors which were in the mind of the witness at the time he testified as to value.
■Judgment will be entered on 15 days' notice, under Rule 50.