ROSLYN FUEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9074, 22072. Promulgated April 30, 1929.

*J. S. Y. Ivins, Esq.*, and *F. E. Youngman, Esq.*, for the petitioner.
*Orris Bennett, Esq.*, and *Hartford Allen, Esq.*, for the respondent.

292

OPINION.

SIEFKIN: Under Docket No. 9074 the petitioner contends that assessment and collection of the deficiencies for the fiscal years ended June 30, 1917, and June 30, 1918, and for the taxable period of six months ended December 31, 1918, are barred by the statute of limitations.

Section 277 (a) (3) of the Revenue Act of 1926 provides:

The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5,

1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

Returns for each of the years in question up to and including the taxable period ended December 31, 1918, were filed on or before June 14, 1919. In the absence of waivers the time within which taxes could be assessed and collected would expire five years after that date, or June 14, 1924.

By letter of September 17, 1925, the respondent informed petitioner of the determination of deficiencies as follows:

| | |
|---|---:|
| Fiscal year ended June 30, 1917 | $4,058.62 |
| Fiscal year ended June 30, 1918 | 1,459.98 |
| Taxable period July 1, 1918, to Dec. 31, 1918 | 3,887.06 |
| Total | 9,405.66 |

There is no evidence that any consents in writing for later determination and assessments of the taxes for the taxable periods listed above were ever entered into and we must, therefore, hold that assessment and collection of the deficiencies asserted are barred by the statute of limitations.

By an amendment to the petition under Docket No. 9074, the petitioner requested that we find that the petitioner has overpaid its income and profits taxes for the fiscal years ended June 30, 1917, June 30, 1918, and for the taxable period, July 1, 1918, to December 31, 1918, and to determine the amounts of such overpayments.

Section 284 (e) of the Revenue Act of 1926 provides:

If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer as provided in subdivision (a). Such refund or credit shall be made either (1) if claim therefor was filed within the period of limitation provided for in subdivision (b) or (g), or (2) if the petition was filed with the Board within four years after the tax was paid, or, in the case of a tax imposed by this Act, within three years after the tax was paid.

In *Greylock Mills*, 9 B. T. A. 1281, affd., 31 Fed. (2d) 655, the respondent determined a deficiency for 1917 and the petitioner assigned as errors in the appeal not only that the deficiency was barred, but also that an additional tax which had been paid prior to this time was barred from collection at the time it was collected. We held that the deficiency for 1917 was barred from collection and furthermore took jurisdiction of the other issue and found that this collection was barred at the time made.

In *Peerless Woolen Mills*, 13 B. T. A. 1119, the question raised was whether the Board has jurisdiction to pass on the plea of the statute of limitations which was made in respect to a part of the tax which was shown and assessed on the original return but which had not been paid. In that case the jurisdiction of the Board in the first instance was derived from the assertion of a deficiency by the respondent. In that case we said:

The Commissioner's determination of the deficiency in question conferred jurisdiction on the Board; the issue with respect to the statute of limitations on account of the unpaid portion of the original tax was timely raised in the petition, and its determination is a necessary incident to an ultimate finding by the Board as to the petitioner's true tax liability. The Board is accordingly of the opinion that it has jurisdiction of the issue here presented as to the running of the statute of limitations with respect to the unpaid portion of the tax assessed on the original return.

As to this question, the case was affirmed by the United States Circuit Court Appeals, 5th Circuit, 28 Fed. (2d) 661.

Likewise, in the instant proceeding, since we have jurisdiction of each of the taxable periods referred to in the petitions by virtue of determinations of deficiencies by the respondent, we have jurisdiction to determine the true tax liability of the petitioner for each of those periods, in so far as it is properly presented to us in the pleadings and evidence.

The petitioner contends that the respondent, in computing the invested capital for each of the taxable periods in question, erred in failing to take into account, as paid-in surplus, the value of the coal lands acquired by the petitioner from the principal stockholder definitely known or accurately ascertainable as of the date of acquisition. The petitioner later confined its contention in this regard to only two tracts of land, the Linn tract and the Brown tract.

Petitioner depends upon section 207 of the Revenue Act of 1917 and section 326 (a) of the Revenue Act of 1918. Section 207 of the Revenue Act of 1917 provides:

SEC. 207. That as used in this title, the term "invested capital" for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

As used in this title "invested capital" does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title nor money or other property borrowed, and means, subject to the above limitations:

(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January

first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: * * *

The Commissioner's regulations under the Revenue Act of 1917 provided:

Where it can be shown by evidence satisfactory to the Commissioner of Internal Revenue that tangible property has been conveyed to a corporation or partnership by gift or at a value, accurately ascertainable or definitely known as at the date of conveyance, clearly and substantially in excess of the cash or the par value of the stock or shares paid therefor, then the amount of the excess shall be deemed to be paid in surplus. The adopted value shall not cover mineral deposits or other properties discovered or developed after the date of conveyance, but shall be confined to the value accurately ascertainable or definitely known at that time.

Section 326 (a) of the Revenue Act of 1918 provides:

SEC. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section) :
(1) Actual cash bona fide paid in for stock or shares;
(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * · *

The petitioner contends that the land (cost, $26,235.27) and the total payments of $1,764.73 were paid in to petitioner for capital stock and that it is entitled to a paid-in surplus as of the date of organization, of $950,000, this amount representing the alleged difference between the value of the coal lands acquired and the par value of its capital stock issued, in the amount of $50,000.

However, we are not convinced that the land was paid in to petitioner in exchange for stock.

A record book of petitioner marked "check book" shows that on July 14, 1906, there was deposited to the credit of petitioner an amount of $26,235.27. This same book, by entry dated July 13, 1906, shows that a check payable to "yourselves" in the amount of $26,235.27 was issued by petitioner for the Brown and Linn properties.

This book shows that on June 30, 1906, Walter Oakes paid petitioner $1,000, which petitioner's books show was received in payment of stock subscriptions. On July 13, 1906, the books show that two other payments were made—one in the amount of $64.73 by Oakes and one in the amount of $700 by an undisclosed person. The

general journal and ledger of petitioner shows that $28,000 cash was paid for 56 per cent stock assessment as follows:

| | |
|---|---:|
| June 30, 1906 | $1, 000. 00 |
| July 13, 1906 | 764. 73 |
| July 14, 1906 | 26, 235. 27 |
| | 28, 000. 00 |

In the absence of clear evidence to the contrary, we must assume that the books of petitioner, in showing that the stock was issued for cash and that the properties in question were acquired by petitioner for cash, truly reflect the transactions.

The respondent has allowed in petitioner's invested capital an amount of $63,246.16, this representing the cost of the properties. This includes the $26,235.27 paid for the Brown and Linn tracts.

Petitioner contends that even if we find that the property was not acquired for stock, the value of the property was greatly in excess of the amount allowed in invested capital and that petitioner is entitled to special assessment under section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918.

Section 210 of the Revenue Act of 1917 provides:

SEC. 210. That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital, the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6,000 therein referred to) for the same calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus (2) in the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000.

For the purpose of this section the proportion between the deduction and the net income in each trade or business shall be determined by the Commissioner of Internal Revenue in accordance with regulations prescribed by him with the approval of the Secretary of the Treasury. In the case of a corporation or partnership which has fixed its own fiscal year, the proportion determined for the calendar year ending during such fiscal year shall be used.

The petitioner has not proved that its invested capital can not be satisfactorily determined, and for the taxable year ended June 30, 1917, the petitioner is not entitled to special assessment.

Mining men who were called as witnesses by petitioner testified that they estimated in 1906 that the Linn and Brown tracts contained at least 2,000,000 tons of recoverable coal in the Roslyn and Big Dirty seams, and that coal could be mined at that time at a profit of $1 per ton. However, in 1909, at which time petitioner's properties were more fully developed, the petitioner revalued all its coal lands

at $269,528.07. From a consideration of all the evidence we are of the opinion that the Linn and Brown properties had a value substantially in excess of their cost to petitioner.

Section 327 of the Revenue Act of 1918 provides:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328;

* * * * * * *

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations, specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

It is true that we have held that the mere fact of statutory exclusion of values from invested capital does not indicate an abnormality, yet, where, as in *Clarence Whitman & Sons*, 11 B. T. A. 1192, and *Rothschild Colortype Co.*, 14 B. T. A. 718, there is thereby created an abnormality affecting invested capital and income, the petitioner is entitled to special assessment. In the instant proceeding the Linn and Brown properties were a substantial income-producing factor in petitioner's business, and we believe that the exclusion of the greater part of the value of these properties from invested capital of petitioner created an abnormality. The petitioner is entitled to special assessment for the taxable year ended June 30, 1918, for the period July 1, 1918, to December 31, 1918, and for the calendar year 1920. See *T. B. Hord Grain Co.*, 6 B. T. A. 549, affd., 25 Fed. (2d) 536; certiorari denied, 278 U. S. 612.

The respondent, for the purposes of determining invested capital for the fiscal years ended June 30, 1917, and June 30, 1918, set up a tentative tax in determining the amount of earnings available for distribution as dividends. In so doing the respondent erred. *L. S. Ayers & Co.*, 1 B. T. A. 1135.

The petition under Docket No. 22072, relating to the year 1920, contains the following allegation of error:

The said Commissioner erred in reducing statutory invested capital with respect to the amount of income, war-profits and excess-profits taxes for the fiscal year ended June 30, 1917; the fiscal year ending June 30, 1918; the taxable period of six months ending December 31, 1918; and the calendar year

1919, subject to averaging as provided by statute, in excess of the said taxes properly assessable and payable for the said taxable years.

However, there is no evidence in the case to show that the respondent acted in the manner alleged and we may not consider the question.

Reviewed by the Board.

*Judgment will be entered under Rule 62 (c).*