*338 OPINION.
Trttssell :
As to the first issue, petitioner contends that assessment is now barred by the statute of limitations, because the waivers purporting to extend the time for assessment are void and of no effect for the reasons that the Revenue Act of 1918 does not authorize an extension of the statute of limitations by agreement of the parties *339 and that the agreements or waivers are void for lack of consideration. The waivers executed by the parties, on the dates as set forth in the findings of fact, were submitted in evidence, but we deem it not necessary to quote the three waivers in our findings. The waivers were executed pursuant to the provisions of section 278 (c) of the Revenue Act of 1924, which authorizes the taxpayer and the Commissioner to consent in writing to an extension of the period of limitations applicable to the taxable years here in controversy. The Commissioner postponed the making of assessments and the enforcement of collections for the taxable years, due to the agreed extension of time within which such action might be taken, and such delay on the part of the Commissioner is just the consideration authorized by the statute of limitations and that which petitioner-desired. We must hold that the waivers are valid and that the assessment and collection of the taxes in controversy are not barred. Cf. Albertina, Baur, 14 B. T. A. 933.
Upon its organization in February, 1914, petitioner acquired for stock a leasehold, the cash value of which we have found to have been $120,000 on the date of acquisition. That value was established by the testimony of several qualified witnesses as to the values of the surrounding property and of leases thereof. The respondent determined that the said leasehold had a value of only $25,000, and computed the allowable deduction for exhaustion of the leasehold interest upon that basis, which was erroneous. In each of the years 1918, 1919, 1920, and 1921 petitioner should be allowed a deduction for exhaustion of the leasehold under section 234 (a) (7) of the Revenue Acts of 1918 and 1921, upon the basis of a cost of $120,000 prorated over the life of the leasehold from February, 1914. East Market Street Hotel Co., 11 B. T. A. 796; Strong, Hewat & Co., 3 B. T. A. 1035.
Petitioner claims that it sustained a loss due to its liquor license and privileges and good will becoming worthless upon the advent of prohibition. It appears that petitioner acquired a liquor license at some time during 1914, but the record does not show whether it was acquired for stock in February, 1914, or from the Hotel Wisconsin Operating Co. in the latter part of 1914 by purchase or otherwise; or whether petitioner applied for and obtained a license when it took over the operation of the hotel in the latter part of 1914. The license having been acquired subsequent to March 1, 1913, the amount of the loss, if any, must be measured by the cost of the property to petitioner. See William Zakon, 7 B. T. A. 687; Morand Brothers, 8 B. T. A. 1262. There is no doubt but that petitioner’s liquor license and privileges and the good will attached thereto, were valuable, but inasmuch as there are no facts of record to establish *340 the cost of the property we are unable to find that petitioner actually sustained a loss. We must sustain respondent’s disallowance of the claimed deduction on account of such alleged loss.
Petitioner contends that its stock of liquor on hand on July 1, 1919, became worthless due to national prohibition and that it sustained a deductible loss in that year in the amount of $12,093.85, the cost of the liquor on hand purchased for resale in its bar, but disposed of by gift in 1919. The War Prohibition Act of November 21,1918, prohibited the sale of distilled spirits for beverage purposes after June 30, 1919, and until the conclusion of the World War and the termination of demobilization. That act further p o-vides that the Commissioner of Internal Revenue prescribe ivies and regulations in regard to the manufacture, sale and removal of distilled spirits held in bond, for other than beverage purposes. The regulations prescribed provided for the issuance of permits to sell liquor for certain purposes other than for beverage. We are of the opinion that the said prohibition act, in and of itself, did not make petitioner’s liquor totally worthless on July 1, 1919. It is well known that prohibition legislation caused a material change in the market for distilled spirits, because legal sales and purchases were limited, and it may have been that petitioner’s liquor became worthless to it on July 1, 1919, due to the cost of legally selling it or the nonexistence of a market, or other facts peculiar to this petitioner. We have no facts of record in regard to any attempt by petitioner to legally sell its liquor, or as to the then market conditions or any other facts affecting petitioner’s disposition of its liquor for other than beverage purposes. We are of the opinion that petitioner has failed to establish a loss in the amount of $12,-093.85, or in any other amount on account of liquor disposed of by gift to individuals shortly after June 30, 1919.
Upon its organization in February, 1914, petitioner acquired for stock certain assets, among which was a leasehold, the actual cash value of which we have found to have been $120,000 on the date of acquisition. The respondent in his computation for the years in question has included in petitioner’s invested capital $25,000 as the value of the leasehold. The term “ tangible property ” as defined in the Revenue Acts of 1918 and 1921 includes leaseholds and the leasehold acquired by petitioner for stock should be included in petitioner’s invested capital for the years in question at its actual cash value of $120,000 as provided by section 236 (a) (2) of the Revenue Acts of 1918 and 1921.
Petitioner claims a paid-in surplus for the years 1919, 1920, and 1921, in the amount of $92,039.18, representing the alleged value in 1914 of hotel equipment in excess of the cost thereof. In 1914 peti *341 tioner purchased the equipment and over a period of time paid therefor a total of $182,915.32, representing the unpaid balance of the original purchase price plus a small additional amount paid to the bankruptcy court. Respondent has included in petitioner’s invested capital for the years in question the total cost and has disallowed the claimed paid-in surplus. The equipment was purchased by petitioner and under the provisions of section 326 of the Revenue Acts of 1918 and 1921, petitioner is not entitled to include in its invested capital as a paid-in surplus the value of the equipment in excess of the cost thereof. Respondent sustained.
Petitioner also claims a paid-in surplus on account of the value of the good will and license rights and privileges alleged to have been acquired in 1914 for capital stock. -With reference to this issue we have heretofore set forth that petitioner has failed to establish how the property was acquired, whether by purchase, or for stock, or otherwise. Also, petitioner has failed to establish the cost or value of the property at the date of acquisition and accordingly this claim for a paid-in surplus must be denied.
Pursuant to the provisions of section 1207 of the Revenue Act of 1926, we must approve the respondent’s reduction of petitioner’s invested capital for the years 1919, 1920, and 1921 by amounts of prorated Federal income taxes which became due and payable during each of said years, in accordance with the regulations in force in respect to such taxable years. However, the effect of this decision upon the taxes due from this petitioner should be reflected in the amounts so deducted from invested capital.
Under authority of the Board’s decision in L. S. Ayers & Co., 1 B. T. A. 1135, we must hold that respondent erred in reducing petitioner’s invested capital for 1921 by computing a tentative tax theoretically set aside from the current year’s earnings in determining the extent to which dividends paid in 1921 were paid from current earnings.
For the year 1919 respondent computed petitioner’s tax under section 328 of the Revenue Act of 1918. Petitioner contends that had the respondent not committed the alleged errors the computation of the tax under sections 230 and 301 would have been a lesser amount than that asserted in respondent’s final determination for the year 1919. The tax liability for the year 1919 should be recomputed in accordance with this decision as to the matters in controversy and also in accordance with the provisions of sections 230 and 301, and section 328 of the Revenue Act of 1918, and the computation which results in the lesser amount of tax should be adopted in determining petitioner’s tax liability for 1919.

Judgment will be entered pursuant to Rule 50.