## APPEAL OF GEORGIA CAR & LOCOMOTIVE CO.

Docket No. 3131.   Submitted July 2, 1925.   Decided October 26, 1925.

1. Taxpayer and the Greene County Railroad Co. were affiliated during the taxable year 1918.

2. The cost of a new roof upon a building used in carrying on taxpayer's business was a capital expenditure.

3. The invested capital of a corporation may not be reduced by the computation of a tentative tax in determining the extent to which a dividend is paid from current earnings of a taxable year. *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135.

*Edward McCarthy, Jr., Esq.*, for the taxpayer.
*P. S. Crewe, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in the amount of $45,611.36 for the calendar year 1918, arising from the refusal of the Commissioner to permit the taxpayer and the Greene County Railroad Co. to file a consolidated return; from the disallowance of $4,301.51, the cost of a new roof placed upon the erecting shed of the taxpayer, as an ordinary and necessary expense; and from the reduction of invested capital in the amount of $18,730.96, on account of dividends alleged to have been paid in excess of available earnings.

## FINDINGS OF FACT.

The taxpayer is a Georgia corporation, engaged in the business of building, rebuilding, and repairing railroad freight and passenger cars, with principal offices in Atlanta. At all times since incorporation the majority of its capital stock has been owned by Forest Greene.

The Greene County Railroad Co. was incorporated under the laws of Georgia in 1911, and at all times since incorporation at least 97.5 per cent of its capital stock has been owned by Forest Greene. This company has 20 miles of main line, with terminals, station buildings, and water tanks, but no shops or roundhouses. It was dependent upon the taxpayer for repairs, which were made at prices considerably less than the prices charged to other customers.

The railroad was originally built by Forest Greene for the purpose of placing cars of the Georgia Car & Locomotive Co. into regular per diem service under the name of the Greene County Railroad Co., but, due to a change in the Master Car Builders' rules before the road was completed, this plan was never carried out. Forest Greene, as principal officer of both corporations, interchanged employees of the two companies from time to time in such manner as seemed to him to be best. When a salaried employee of one company was assigned to work for the other company, no charge was made for such service. The offices of the Greene County Railroad were in the building of the taxpayer, no rent being charged by the latter, and the clerical force of the taxpayer performed the office work of the railroad company.

During the taxable year the stockholdings in the two corporations were as follows:

| Stockholder. | Georgia Car & Locomotive Co. | Greene County R. R. Co. |
|---|---|---|
| Forest Greene, president both corporations | 75.3 | 97.5 |
| Forest Greene, executor of Hubert Greene, his brother | 7.5 | .5 |
| John C. Knapp | 4.3 | 1.0 |
| Walter Turner, employee of Georgia Car & Locomotive Co | 4.3 | |
| C. G. Harris, employee of Georgia Car & Locomotive Co | 8.6 | |
| W. H. Patterson | | 1.0 |
| | 100.0 | 100.0 |

The 7.5 per cent of Georgia Car & Locomotive Co. stock standing in the name of Hubert Greene was held by Forest Greene as executor under the will of Hubert Greene, his brother, who died in 1915. At or about the time this stock was acquired by Hubert Greene, Forest Greene was endeavoring to acquire control of the stock of the two corporations, but did not have sufficient money immediately available to pay for the stock. Hubert Greene was in a

position to assist his brother in carrying out his desire and purchased the stock with the understanding that Forest Greene would later take over the stock at cost, should his brother so desire. In the meantime Hubert Greene died and, as the stock was paying dividends, Forest Greene continued to hold it as executor in order that the dividends might be applied in payment of the decedent's indebtedness. The beneficiaries of the estate were his wife and children. The widow informed Forest Greene that it was her desire that he should handle the estate as he thought best, and none of the beneficiaries gave Forest Greene any instructions as to what disposition should be made of any property belonging to it. This stock was voted by Forest Greene during the taxable year 1918.

John C. Knapp, who during the taxable year owned 4.3 per cent of the stock of the taxpayer, had been connected with the company since 1907, until the middle of 1917. In 1914, Forest Greene sent Knapp to Monroe, Ga., to manage the Greene County Railroad, Knapp at the same time retaining his official connection with the taxpayer. In 1917, the taxpayer's business began to improve. The outlook, however, was uncertain and, after consulting Greene, Knapp was granted an indefinite leave of absence from his position with the taxpayer and the Greene County Railroad in order that he might accept employment at a larger salary in the City of Birmingham, Ala., with the understanding that when conditions improved Greene would call him back to Atlanta to work for the taxpayer. During the time Knapp was employed in Birmingham, in 1917 and 1918, it was understood that his absence was only temporary and he looked forward to returning to work with Greene. During this time, also, Knapp was in frequent communication with Greene concerning the affairs of the taxpayer and the Greene County Railroad, going to Atlanta at least once a month for the purpose of conferring with Greene concerning contracts and other matters relating to the two companies. Knapp returned to his position with the taxpayer in 1919, at which time he purchased from the company the stock then held by C. G. Harris, under an arrangement by which the company paid Harris for his stock and turned it over to Knapp, to be paid for out of the dividends received thereon, the certificates being transferred direct from Harris to Knapp.

Walter Turner, who during the taxable year was in the employ of the taxpayer, acquired his stock in that company in 1908 from outside interests, through the instrumentality of Forest Greene, who assisted him in paying for the stock.

C. G. Harris, also employed by the taxpayer as shipping clerk and timekeeper, acquired his stock in the company in 1909 from outside interests, through the instrumentality of Forest Greene. In 1919,

Harris resigned on account of poor health, at which time he transferred his stock to Knapp through Forest Greene and the taxpayer, as hereinbefore set forth.

Since 1912, Forest Greene has had authority to designate the person who should acquire stock of the taxpayer. The stock owned by Knapp, Turner, and Harris was purchased by them at the solicitation of Greene and with his assistance, they at the time agreeing with Greene that if they should leave the company the stock would be sold to Greene or to such persons as he might designate.

Since 1919, Greene has been a creditor of the Greene County Railroad Co. and a debtor to the Georgia Car & Locomotive Co. In 1918 he was indebted to the taxpayer in the amount of approximately $40,000 and the Greene County Railroad was indebted to him in the amount of approximately $60,000. Both companies had occasion to borrow money, and the bank required their paper to be endorsed by Greene. Greene was the leading spirit and dominating influence in all of the affairs of the taxpayer and the Greene County Railroad, and none of his policies were ever challenged or opposed by any of the other stockholders. They always voted their stock in accordance with his wishes. The stockholders and directors' meetings were informal. Greene would make purchases, contracts, or do some other corporate act and later call the stockholders or directors together and inform them of what he had done. It was the custom of the secretary to prepare the minutes in advance in accordance with Greene's direction, such resolutions occasionally being written as having been offered by some person other than Greene.

The Commissioner held that the taxpayer and the Greene County Railroad Co. were not affiliated and eliminated the 1918 loss of $10,085.37 of the railroad company and excluded the railroad company's invested capital of $73,458.62.

During 1918 the taxpayer replaced the roof of its erecting shop at a cost of $4,620.51, which was charged to expense and claimed as a deduction from gross income. The erecting shop was originally constructed in 1893. Since 1901, the roof had been replaced three times. The roof replaced in 1918 was put on in 1911. The Commissioner allowed a deduction for exhaustion, wear and tear of the roof amounting to $319 and disallowed the balance of $4,301.51 on the ground that the expenditure should have been capitalized.

The Commissioner reduced the taxpayer's invested capital for 1918 in the amount of $18,730.96 on account of dividends determined by him to have been paid in excess of available current earnings. In determining the amount of such available earnings, the Commissioner accrued a tentative tax on 1918 income amounting to $44,829.60, which he deducted from the available earnings.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 7 days' notice, under Rule 50.

OPINION.

LITTLETON: The first question presented is whether the taxpayer and the Greene County Railroad should be permitted to file a consolidated return for the year 1918.

The facts concerning stockholdings in the two companies, the relationship of the stockholders, and the manner in which the business of the two companies was carried on during the taxable year have been fully set forth in the findings of fact. From these facts we are of the opinion that Forest Greene owned or controlled all of the stock of both corporations. He owned directly 97.5 per cent of the stock of the Greene County Railroad and 75.3 per cent of the stock of the taxpayer; he controlled directly 7.5 per cent of the stock of the taxpayer and 0.5 per cent of the stock of the Greene County Railroad. He therefore controlled absolutely, through ownership and direct control, 82.8 per cent of the stock of the taxpayer and 98 per cent of the stock of the Greene County Railroad. The evidence in this appeal warrants the conclusion that Greene controlled through his interest in the two corporations, which was closely affiliated with that of the other stockholders, the remaining 17.2 per cent of the stock of the taxpayer and the 2 per cent of the stock of the Greene County Railroad. *Appeals of Isse Koch & Co.,* 1 B. T. A. 624; *Hagerstown Shoe & Legging Co.,* 1 B. T. A. 666; *Schloss Brothers Co.,* 1 B. T. A. 581; *Gamon Meter Co.,* 1 B. T. A. 1124; *Edward Rose Co.,* 2 B. T. A. 341.

We are of the opinion, in respect to the second issue, that the Commissioner correctly disallowed the deduction of the cost of the new roof placed upon the taxpayer's building as an ordinary and necessary expense. While the new roof, strictly speaking, was not an addition to the building, it was a replacement, and in and of itself had a life in excess of one year. The cost thereof should be treated as a capital expenditure.

The action of the Commissioner in reducing the taxpayer's invested capital in the amount of $18,730.96 on account of dividends determined by him to have been paid in excess of available current earnings through the accrual of tentative tax of $44,829.60 upon the income for the taxable year is disallowed on authority of the decision in the *Appeal of L. S. Ayers & Co.,* 1 B. T. A. 1135.