Ohio-Kentucky Loose Leaf Tobacco Warehouse Company v. Commissioner.
Ohio-Kentucky Loose Leaf Tobacco Warehouse Co. v. Commissioner
Docket No. 21747.
United States Tax Court
1951 Tax Ct. Memo LEXIS 368; 10 T.C.M. (CCH) 11; T.C.M. (RIA) 51002; January 8, 1951
*368 Where a "lift" of roofing material applied to a warehouse roof to restore the building to a useable condition had a useful life of only one year, held, the petitioner may treat the cost thereof as a repair expense and not as a capital expenditure. Robert S. Marx, Esq., and John Wood, Esq., for the petitioner. R. W. Harbert, Jr., Esq., for the respondent. RICE
This case involves deficiencies in declared value excess-profits tax in the amount of $517.78, and excess profits tax in the amount of $3,353.79, for the taxable year ended September 30, 1945. The sole issue is whether a new lift covering the old roof of petitioner's building was a repair or a capital improvement. Memorandum Findings of Fact and Opinion Petitioner is an Ohio corporation with its principal place *369 of business at Ripley, Ohio. The return for the period herein involved was filed with the collector of internal revenue for the first district of Ohio at Cincinnati, Ohio. Petitioner's business consists of operation of a warehouse used for tobacco storage and auctions. The warehouse was constructed in 1932, is approximately 280 feet long by 220 feet wide, has a floor area of about 65,000 square feet, and a roof area of about 67,000 square feet. It is used during the tobacco auction season which is a period of about 13 weeks beginning late in October. The remainder of the year it is not in use. The most important parts of a tobacco storehouse are its floor and roof. Tobacco is ruined by becoming wet and the roof must, therefore, be waterproof. If, during storage, tobacco is damaged by water, the warehouse is responsible for such damage. The roof also contains numerous skylights since natural light is necessary to see tobacco quality during an auction. The roof of petitioner's warehouse, as originally constructed, consisted of a layer, or "lift" of 30-pound felt roofing material nailed to a 7/8 inch thick wood sheathing. This lift was in turn covered by two 15-pound lifts, each layer *370 being mopped with hot asphalt. The 15-pound lifts were lapped over each other in such a manner that there were five layers of felt and five layers of asphalt, which, together with the wood sheathing, made the roof about 1 3/16 inches thick. The roof was guaranteed for 10 years and had a life expectancy of 10 to 15 years. There are about 217-218 skylights in the roof. After about 1940, some leaks developed, and it became necessary to apply paint or patches in spots. Cost of such repairs varied, but in some years amounted to two or three hundred dollars. A very severe winter in 1944-1945, followed by higher than average precipitation, so damaged the roof that it was impossible to use the warehouse for tobacco storage. Farmers would not patronize a warehouse in which their tobacco would be spoiled. It was felt that something other than painting or patching would be necessary to keep the warehouse in a useable condition. Felt roofing was very scarce due to the war, and was on an allotment basis. Finally, petitioner's president located a man who agreed to apply one lift (equivalent to two layers due to the way it is lapped on) to the entire roof and mop it with hot asphalt. He began *371 in August of 1945 and finished in September or October. Petitioner paid $3,979.79 for the job. The material used was average grade felt roofing material, although on the thin side and made of short fibers. Roofing felt made of long fibers is the better quality. In the roofing trade a new roof is one which will last 10 to 15 years, and which will qualify for a guarantee for that period. In order to qualify for a 10-year guarantee against damage from ordinary wear and tear, a minimum of three 15-pound lifts must be applied over an old roof. Leaks developed almost immediately after the application of the new lift. In 1946, 1947 and 1948, petitioner spent a total amount to repair the roof almost equivalent to the cost of work done in 1945. At the time of the trial (1949) the roof was in such poor condition that only an entirely new roof would be adequate. We find, from all the evidence, that the two layers of material applied in 1945, had a useful life of only one year. Petitioner charged the $3,979.79 to repairs and deducted that amount on its tax return as an ordinary and necessary business expense for its fiscal year 1945. The Commissioner determined that such a job was not a repair *372 but a capital improvement which petitioner should depreciate. The amount of $3,979.79 expended by petitioner in its fiscal year 1945, was for repair of its roof and was deductible as an ordinary and necessary business expense during that year. Opinion RICE, Judge: The sole issue is whether the amount expended was for a deductible repair or for a capital improvement. This is a question of fact, dependent upon all the circumstances in the case. Treasury Regulations 111 § 29.23(a)-4, attempts to distinguish between what is a repair and what is a capital improvement as follows: "The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept. * * *" In Illinois Merchants Trust Co., Executor, 4 B.T.A. 103, the problem was *373 discussed and a distinction made between the two sentences of the regulation. This tribunal said: "* * * To repair is to restore to a sound state or to mend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * *" [p. 106] The purpose for which the expenditure is made is also a factor to be considered. In the instant case, the lift was applied as a temporary expedient to make the building useable until such time as the scarcity of materials, due to the war, would no longer exist and proper materials would *374 be available with which to put on a roof of a longer life. One of the expert witnesses testified that the useful life of the work done was one year. The other expert testified that the lift would last one, or at the most two years, but that his company would insure it for only one year. Based on the testimony of the expert witnesses and all the other evidence, we have found that the useful life of the work done in 1945 was at most one year. In Georgia Car and Locomotive Co., 2 B.T.A. 986, a new roof with a life of more than one year was held to be a capital expenditure. In Thomas J. Locke, 8 B.T.A. 534, the petitioner introduced no evidence to prove that the roof was not a capital expenditure. The instant case can be distinguished since here the work had a useful life of only one year. The original life of the building was not prolonged, nor its value materially increased. The work which was done restored the building to a state where business could be continued, but created no additional or different uses. Cf. American Bemberg Corporation, 10 T.C. 361, aff'd., 177 Fed. (2d) 200; Midland Empire Packing Company, 14 T.C. 635. *375 In our opinion, the expenditure of $3,979.79 was a repair and, therefore, is deductible as an ordinary and necessary business expense. Decision will be entered for the petitioner.