Southwest Ornamental Iron Company, a Corporation v. Commissioner.
Southwest Ornamental Iron Co. v. Commissioner
Docket No. 30764.
United States Tax Court
1953 Tax Ct. Memo LEXIS 253; 12 T.C.M. (CCH) 521; T.C.M. (RIA) 53171; May 15, 1953
Whitson Rogers, Esq., 1200 Waltower Building, Kansas City, Mo., for the petitioner. David Karsted, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in petitioner's income, declared value excess-profits, and excess profits taxes in the years and amounts as follows: Income
Declared Value
Excess Profits
Year
Tax
Excess-Profits Tax
Tax
1941
$51.12
$25.00
$ 188.89
1942
583.32
1944
5,930.36
The issues presented are (1) whether depreciation at an annual rate of two per cent was allowable on petitioner's building for the years 1931 to 1940, inclusive; (2) whether petitioner is entitled to accelerated depreciation on its machinery and equipment in an amount 50 per cent greater than that claimed *254 on its returns for 1941, 1942 and 1944; (3) whether the amount of $1,774.50, representing the reroofing of petitioner's building in December 1944 is deductible under section 23 (a) (1) (A) of the Internal Revenue Code; (4) whether for the year 1944 petitioner is entitled to a deferment of excess profits tax under the provisions of section 710 (a) (5) of the Internal Revenue Code; and (5) whether, in computing petitioner's invested capital credit for 1942, the earnings and profits as of December 31, 1941, should be reduced by the amount of any deficiency in income and excess profits taxes for 1941. Part of the facts have been stipulated and are found accordingly. Findings of Fact Petitioner is a Missouri corporation located in Kansas City, Missouri, and reports its income on the accrual basis for calendar years. For the years 1941, 1942 and 1944, it filed its income and declared value excess-profits and excess profits tax returns with the collector of internal revenue for the sixth district of Missouri. Prior to 1941, the petitioner was engaged primarily in the fabrication of ornamental iron. In 1941 petitioner changed to defense *255 work, and throughout the taxable years involved, 1941, 1942 and 1944, manufactured parts for landing barges and landing craft. This work involved the use of a heavier gauge of plate and sheet steel than that required for onramental iron work. Since petitioner's machinery was not designed for this heavier type structural work, it was necessary to make certain replacements and repairs to the machinery, the extent of which does not appear in the record. Petitioner used a straight line five per cent composite depreciation rate on its machinery and equipment. The building owned and occupied by petitioner was originally built around 1920. A fire occurred about ten years later, after which there was left standing only the east or front wall and about 75 per cent of the two side walls. These walls were brick, approximately 13 inches thick, and when the building was restored about December 30, 1930, these walls became part of the restored building. This building has a concrete floor and steel trusses to help support the roof which is made of wood with an asphalt covering. The original cost of the building in 1930 was $49,170.96 and capital additions were made in 1931 and 1938 in the respective *256 amounts of $540 and $500. For the years 1931 to 1940, inclusive, petitioner depreciated its building over a useful life of 100 years. The total depreciation claimed by petitioner and allowed by respondent for the ten-year period was $4,975.70, leaving an adjusted basis as of January 1, 1941, of $45,235.26. Beginning with the year 1941 petitioner started to depreciate its building over a useful life of 40 years, or at an annual rate of two and one-half per cent. The respondent determined that the building had a useful life of 50 years from January 1, 1931, and that the depreciation allowable for the ten-year period of 1931 to 1940, inclusive, was $9,951.40, computed by use of a two per cent annual rate. This adjustment reduces the adjusted basis of the building as of January 1, 1941, to $40,259.56, to be depreciated over a remaining useful life of 40 years, or at an annual rate of two and one-half per cent. By 1944 the roof of petitioner's building had developed numerous leaks, and estimates were obtained as to the cost of repairing it. Inasmuch as the estimates upon spot repairing of the roof were approximately the same as the cost of reroofing, it was decided to reroof the entire *257 building. The reroofing consisted of sweeping the entire area thoroughly and removing all of the dirt and debris from the building. Over the entire surface there was applied one layer of thirty-pound asphalt felt nailed to the deck. Over this there was applied two layers of fifteen-pound asphalt felt, mopped solid with asphalt between sheets so that at no place did felt touch felt. Over the entire top surface there was applied a uniform coating of hot asphalt and all flashings were replaced with new. Flashings are used where the roof abuts against a wall and are used to prevent the water from running into the joint between the wall and the roof. The roof carried a two-year service guarantee and the cost of the entire job was $1,774.50. This resurfacing process was the only time from the construction of the building in 1930 up to the present time that the roof of petitioner's building has been so treated. In its 1944 return petitioner claimed the cost of reroofing as a deduction. Respondent disallowed the deduction on the ground that it constituted a capital expenditure. During the year 1944 the employees of petitioner were negotiating for an increase in wages which, if granted, *258 was to be retroactive from the beginning of that year. The negotiations continued until March 14, 1945, when it was finally determined that no wage increase should be granted. However, in the petitioner's 1944 income and declared value excess-profits tax return, filed on March 15, 1945, an item of $4,500, representing a reserve to cover such proposed wage increase, was claimed as a deduction. In the return as filed the adjusted excess profits net income was reported to be $23,244.27 and the normal tax net income, computed without regard to the credit provided in section 26 (e) of the Internal Revenue Code, was shown to be $40,669.06. No deferment under section 710 (a) (5) of the Internal Revenue Code was claimed in petitioner's excess profits tax return for the year 1944, and no application for relief under section 722 of the Code was attached to the return. On March 15, 1946, petitioner filed amended 1944 income and excess profits tax returns, wherein the $4,500 deduction was not claimed. However, $4,275, an amount equal to the excess profits tax on said deduction, was claimed as a deferment in the amended excess profits tax return. Also, *259 on March 15, 1946, the petitioner filed for the first time a Form 991 for the year 1944. Respondent determined that petitioner was not entitled to defer $4,275 of its 1944 excess profits tax under section 710 (a) (5) of the Code. Opinion LEMIRE, Judge: The first question presented involves the propriety of the respondent's action in disallowing the amount of $248.78 of the total depreciation claimed by the petitioner in each of the taxable years, 1941, 1942 and 1944. For the years 1931 to 1940, inclusive, petitioner claimed and was allowed depreciation on its building based on a useful life of 100 years, or $4,975.70. The respondent contends that the useful life of the building was 50 years and the "allowable" depreciation for the period 1931 to 1940, inclusive, was two per cent annually, or a total of $9,951.40. Respondent, therefore, reduced the basis for depreciation for the taxable years by the sum of $4,975.70, being the difference between the amount of $4,975.70 claimed by petitioner and the amount "allowable." The petitioner's basis for depreciation for the taxable years in question was its cost or other basis reduced by the total amounts "allowed" or "allowable" (whichever *260 is greater) for prior years. Sec. 113 (b) (1) (B), Internal Revenue Code; United States v. Ludey, 274 U.S. 295. The parties are in agreement that the remaining useful life of the building was 40 years from January 1, 1941. The respondent having determined that the foreseeable life of the building was 50 years from 1930, the burden was upon the petitioner to establish by proof that the determination was erroneous. The record contains no such proof and in the absence thereof the respondent's determination must stand. The second issue is whether petitioner is entitled to accelerated depreciation on its machinery and equipment for 1941, 1942 and 1944. For those years petitioner claimed depreciation on a straight line composite rate basis of five per cent annually, but now contends on brief that respondent erred in "not allowing at least 50% greater depreciation" for those years. It is clear that when delicate machinery designed for the manufacture of a certain product is used in manufacturing a product of much coarser materials for which use it is not fitted, and is operated at a heavy overload of its normal capacity, the owner is entitled to deduct *261 an amount representing extraordinary depreciation. A.R.R. 45, 2 C.B. 141; A.R.R. 390, 4 C.B. 371. It appears that during the taxable years in question petitioner operated 60 to 70 hours weekly instead of a normal 40 hours, and that in fabricating the heavier gauge steel than ordinarily handled, it had to make some repairs and replacements to keep its machines running. No evidence is offered to establish the extent to which this unusual work load resulted in shortening the remaining useful life of petitioner's machinery, nor does it appear that such equipment was ever examined by competent experts for such purposes. On this issue, then, we hold that petitioner's evidence fails to prove it is entitled to an amount of depreciation greater than that allowed by respondent. Evidence of excessive use, without more, will not support a claim for abnormal or accelerated depreciation. Harry Sherin, 13 T.C. 221, 231; Copifyer Lithograph Corp., 12 T.C. 728. The third issue presented is whether the sum of $1,774.50 expended by petitioner in 1944 for roofing work on its building is deductible as an ordinary and necessary business expense under *262 section 23 (a) (1) (A) of the Internal Revenue Code. The respondent contends that the payment was a capital expenditure and is recoverable only by way of depreciation. By 1944 the original roof on petitioner's building, consisting of wood covered with asphalt, had developed numerous leaks. The cost of resurfacing the entire roof being approximately the same as that for spot repairs, petitioner had the entire old surface covered with one layer of thirty-pound asphalt felt and two layers of fifteen-pound asphalt felt, and all flashings were replaced with new. This resurfacing process was the first time that the roof had been so treated since its construction in 1930. We think on the facts presented the reroofing was a complete replacement extending the useful life of the building and that the cost thereof constitutes a capital expenditure. Georgia Car & Locomotive Co., 2 B.T.A. 986. We hold, therefore, that respondent did not err in disallowing the deduction under section 23 (a) (1) (A) of the Code. The next issue for determination is whether petitioner is entitled to defer a portion of its 1944 excess profits tax under the provisions of section 710 (a) (5) of the Internal Revenue Code *263 . In petitioner's 1944 income and declared value excess-profits tax return, filed March 15, 1945, petitioner claimed as a deduction the sum of $4,500, representing a reserve set up to cover a proposed wage increase to its employees. No Form 991, Application for Relief Under Section 722, was filed with its returns for that year nor did petitioner claim a deferment under section 710 (a) (), although its excess profits tax computed without the benefit of section 722 was in excess of 50 per cent of its normal tax net income, computed without the credit of section 26 (e) of the Code. In an amended income and declared value excess-profits tax return for 1944 filed by the petitioner on March 15, 1946, the $4,500 deduction was not claimed, since on March 14, 1945, it had been determined that no 1944 wage increase would be granted. However, petitioner claimed $4,275, an amount equal to the excess profits tax on such deduction, as a deferment, and a Form 991 was filed therewith. We do not agree with petitioner's contention that since the deferment in question is of the additional tax shown on its amended return, filed in 1946, the situation is the same as if filed in the original 1944 return. *264 Such a theory would allow taxpayer to defer all such deficiencies by belatedly filing an amended return and a Form 991. Section 710 (a) (5) provides in pertinent part that "the amount of tax payable at the time prescribed for payment may be reduced" provided "a taxpayer which claims on its return" the deferment and benefits of section 722. The word "return" has been oft construed to refer only to the original return. See Ira Goldring, 20 T.C. 79 (April 16, 1953); Cedar Valley Distillery, Inc., 16 T.C. 870; and Denman Tire & Rubber Co., 14 T.C. 706. Although involving a different section of the Code, we think that our language in Sarah Briarly, 29 B.T.A. 256, is apposite. In that case, involving an election to report gain under the installment basis, we stated: "* * * These provisions bestowed a benefit on taxpayers that had not theretofore had statutory approval. Where benefits are sought by taxpayers, meticulous compliance with all named conditions is required. Lucas v. Pilliod Lumber Co., 281 U.S. 245. The statute here involved provides that in the case of an installment sale of real estate 'the income may * * *265 * be returned' on the installment basis. This, in our opinion, requires both timely and affirmative action on the part of those seeking to take advantage of the benefits conferred by the statute. As pointed out above, taxpayers voluntarily filing returns and making timely election are bound by their choice. To allow a choice where the taxpayer sits supinely by until by the diligence of the Government it is discovered that a tax is due would put a premium on inertia that certainly is not within the spirit of our system of taxation. If any class of taxpayers is entitled to claim a preference, it consists of those who have complied with the statute. * * *" Petitioner here did not claim the benefits of section 722 in its original return for 1944, did not then claim a deferment, and did not file a Form 991 with its return, and is not, therefore, in our view entitled to avoid payment of an acknowledged deficiency by the expediency of changing its election through the medium of an amended return. Accordingly, we hold for respondent on this issue. The final issue raised by the pleadings relates to the respondent's adjustment in computing petitioner's invested capital for 1942 by reducing *266 the earnings and profits as of December 31, 1941, by $265.01, the amount of the deficiencies determined in petitioner's income and excess profits taxes. Petitioner upon brief makes no argument with respect to this issue. On the authority of Stern Brothers & Co., 16 T.C. 295, we sustain the respondent's determination. Decision will be entered for the respondent.